(No. 37938.—

RUBY I. SULZBERGER *et al.*, Appellees, *vs.* THE COUNTY OF PEORIA, Appellant.—(CARL A. HOERR *et al.*, Intervenors.)

*Opinion filed November 26, 1963.*

JAMES V. CUNNINGHAM, State's Attorney, of Peoria, (J. MICHAEL MATHIS, Assistant State's Attorney, of counsel,) for appellant.

E. B. GROEN and EDWARD C. MOEHLE, of Pekin, for appellees.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

This appeal was taken by the defendant, the county of

Peoria, from a decree of the circuit court of Peoria County holding the county zoning ordinance of Peoria County to be unconstitutional as applied to plaintiffs' property. The county here argues that the zoning ordinance, as applied to plaintiffs' property, is a reasonable and valid exercise of the police power of the county; that plaintiffs failed to discharge their burden of showing the ordinance to be arbitrary and unreasonable; that a fair difference of opinion as to the reasonableness of the ordinance prevails and that the judgment of the legislative bodies must be sustained; and that changes resulting from an agreement entered into between plaintiffs and adjoining property owners, subsequent to the filing of the complaint, as to restrictions upon the use of the property, should the ordinance be declared void, have so altered the factual situation from that presented to the zoning board of appeals and the county board of supervisors in connection with plaintiffs' request for a rezoning of their property, that we should hold plaintiffs have not exhausted their administrative remedies and must resubmit their request for an amendment on the basis of the changed factual situation so that the legislative bodies might have an opportunity to reconsider their decision in the light of the presently existing conditions.

This appeal comes directly to this court pursuant to section 75(1)(c) of the Civil Practice Act, (Ill. Rev. Stat. 1961, chap. 110, par. 75,) since the trial judge has certified that the validity of the county zoning ordinance is involved and the public interest requires a direct appeal.

Plaintiffs Couri are the owners of an 8½-acre tract which was originally zoned commercial at the time of adoption of the county zoning ordinance in 1948. This property was acquired by the Couris in 1958 for $65,000; no question is raised as to its zoning status. Plaintiffs proceeded to attempt its development as a shopping center, but were advised by prospective tenants that the area was insufficient for the purpose proposed, and that some 30 to 40 acres of land

would be necessary. Thereafter plaintiffs secured an option to purchase an adjoining 29 acres, presently zoned residential, constituting a part of a larger tract known as Meadowview Subdivision, and it is this parcel which is here directly involved. This tract was owned by the Sulzbergers who had platted the subdivision intending to develop the property for residential purposes in 1958. While streets were dedicated, none were opened, no curbs, gutters or utilities provided, and no development occurred, although two lots were sold. Vacation of the dedicated streets subsequently occurred in 1961.

On May 24, 1960, plaintiffs entered into an option agreement for the purchase of the 29 acres for $100,000. On August 26 a petition was filed by plaintiffs with the zoning board of appeals of Peoria County seeking a reclassification of this tract from its residential status to commercial. This petition was not acted upon within the option period or an extension thereof, and, when further extensions could not be secured, plaintiffs completed the purchase, apparently with the understanding that, if plaintiffs were unsuccessful in their rezoning efforts, the Sulzbergers would repurchase. The validity of the oral repurchase agreement is now questioned since one of the Sulzbergers has died, and they have been dismissed as parties.

On April 14, 1961, the zoning board of appeals filed its recommendation with the county board of supervisors recommending denial of the petition, and, on May 10 the latter body, by a vote of 24 to 16, approved the recommendation and denied the petition.

On November 13, 1961, a complaint for declaratory judgment was filed. Subsequently, certain residential property owners along the northern boundary of the subject property successfully sought leave to intervene in opposition to the complaint. Thereafter plaintiffs and intervenors entered into a written agreement limiting the use of a portion of the 29-acre tract along the north boundary. This agree-

ment was contingent, by its terms, upon the entry of the judgment sought, and establishes a buffer strip some 120 feet wide along the north edge of the property in question. This contract also limited the nature of the improvements upon the land, provided that the ravine, trees and shrubbery now separating the tract from intervenors should remain in their natural state and provided for other restrictions upon the use of the tract for commercial purposes should such use become permissible. Thereafter intervenors did not further participate in these proceedings although they remain as parties hereto. The only appellant is the county of Peoria.

The commercially zoned and presently undeveloped 8½-acre tract forms the major portion of the eastern boundary of the 29-acre parcel, the remaining one third consisting of nonobjecting residentially zoned land on which one house has been built. The northern boundary is a ravine testified to as being 50 to 60 feet deep and varying from 100 to 200 feet in width, in and along which are many trees and shrubs agreed to be left in their natural state. To the north of the ravine are several substantial homes and somewhat further north other residences, none of the owners of which are presently objecting to the proposed use of plaintiffs' property. On the west are several ravines and almost entirely undeveloped land. On the south the subject tract is bounded by Glen Avenue, an unimproved road on the south side of which is Golden Gardens, a residential subdivision in which all of the owners of lots fronting on Glen Avenue have signed consents to, or indicated they would not oppose, reclassification.

A description of the development in the area bounding the 8½-acre tract will be helpful to an understanding of the questions involved since it is proposed to use the entire 37½ acres as a unit. The entire parcel is roughly triangular in shape. It comes to a point at the intersection of Glen Avenue, which extends along the south edge of the triangle in

an east-west direction, and Big Hollow Road which runs northwesterly and southeasterly along the northeasterly edge of the triangle. A very short distance east of Big Hollow Road is U.S. Route 150 which also intersects Glen Avenue some 150 to 200 feet east of the Big Hollow-Glen intersection. Also contributing traffic to this corner is Hamilton Road which enters from the south. The intersection carries a heavy volume of traffic, and the record contains evidence relating to proposed highway improvements which will provide four-lane divided highways on U.S. 150, Hamilton Road and a portion of Big Hollow Road when completed.

A substantial amount of property near the intersection and all corners thereof are presently zoned commercial. South of this corner along the eastern side of U.S. Route 150 is the Crossroads Bowling Alley with 32 lanes and three stores therein, including a tavern open 7 days a week until 1 :00 A.M.; just north thereof, and fronting on Glen Avenue as it extends east from the intersection, is a tractor equipment distributorship building handling excavating and grading equipment with used tractors and graders parked about the property. Directly across Glen Avenue are a package liquor store, a cafe, a grocery, and a drug store. Immediately to the east thereof is a filling station, with a dance studio to the north of it, and a miniature golf course nearby. Between Hamilton Road, the first street east of U.S. Route 150, and that route, and immediately north of the intersection with Glen Avenue is a National Tea Company supermarket opened in late 1960. Between Route 150 and Big Hollow Road, and directly across the street from the apex of the triangle is a Standard Oil filing station. To the north is a large public auction house where sales are held three nights per week, including Sundays. Just to the north of this is an excavating business with heavy equipment parked in the lot and next is a nursery selling trees, feeds and fertilizers. In addition to the foregoing, there is a commercial

development on the southwest corner of the Glen Avenue and Big Hollow Road intersection.

Five witnesses testified in the trial court. The county zoning officer testified that at the time of adoption of the county zoning ordinance only the west side of Big Hollow Road was zoned commercial, but amendments since then have changed three corners to commercial, and numerous properties within two or three blocks of the intersection have since been rezoned commercial.

F. D. Hitchcock, a realtor and appraiser, testified on behalf of plaintiffs. His 18 years experience had been almost totally in the Peoria area. His testimony indicated the residential property in Joan Manor which lies to the north of Big Hollow Road and to the west of U.S. Route 150, and which is a residential subdivision, would be appreciated in value if the subject property were developed as a shopping center, and that the same appreciation would apply in Rolling Acres, a similar subdivision lying immediately to the east of Highway 150. He saw no depreciation in value of the residential property adjoining plaintiffs on the north. He further testified there would be no adverse affect on either Golden Acres or Farrelly Subdivision, both of which lie to the south of the subject property, if the proposed development were permitted. In his opinion the highest and best use of the subject property would be for commercial development, and that the area under consideration and the area along both sides of U.S. Route 150 presently have and are now developing a trend toward a general commercial type area and that the adjacent area had shown no evidence over the past 10 to 14 years of any demand for residential development; that the low-cost area to the south of Glen Avenue was a factor against profitable residential development of the subject tract. He also testified that since World War II there had been a general expansion and growth of the city of Peoria in a north and northwesterly direction. In his opinion the residential lots could be sold, if fully de-

veloped, for a total of $120,000; assuming a development cost of $118,360, this would leave less than $2,000 to apply towards land cost.

Forrest Adelberg Phillips, an architect also testified on behalf of the plaintiffs. The substance of his testimony with reference to the 8½-acre tract was that it was too small for substantial commercial development, and that a larger tract of 35 to 40 acres is necessary. He further testified that his judgment was that it would not be feasible to develop the subject tract for residential purposes based upon the $100,000 acquisition cost. He did not believe that development of a regional shopping center as proposed would depreciate the surrounding properties from an aesthetic point of view. It was his opinion that development of a subdivision on the subject property for residential purposes would return only a margin of $40,000 for land value and profit, without considering the $100,000 land cost.

Albert H. DeYoung, a realtor with some 14 years experience in Peoria County, testified on behalf of defendants that the property surrounding the subject tract, particularly that on the north, would be seriously hurt in value by a shopping center. He further stated the presence of the low-cost area to the south would not be a deterrent to residential development if tall bushes and shrubbery were utilized as a screen, and that Sulzberger had not sold the Meadowview lots because of the fact that he had never gone ahead with his development project by providing streets, curbs, gutters and utilities to attract people who would come in and build. The witness testified he had tried to buy the subject tract from the Sulzbergers for purposes of residential development 5 or 6 years earlier, but that the owners would not sell. He agreed that the Joan Manor property would not be adversely affected except by additional traffic at the intersection. He also testified there would be a substantial gain on a subdivision development, but agreed that commercial development would be more profitable.

His opinion regarding residential developmental cost was that land value and cost of improvement would aggregate $5,500 per acre. He indicated that residential development of the entire subdivision as originally platted would be more profitable since some of the best residential property was outside the area of the subject tract, and that additional income could be realized from this source and from decreasing the size of the lots without affecting the sale price, since he felt they were larger than necessary. He estimated proper development would yield 40 lots at $5,000 each, and he also believed construction of the houses by the developer would produce a higher return on a residential project. He conceded that a smaller shopping center on the 8½-acre tract would detract from the desirability of surrounding property for residential purposes, but not to the extent that a larger one would.

Defendant's contention that the alteration of the physical facts by the execution of the agreement between plaintiffs and intervenors and the vacation of the platted streets in Meadowview subdivision necessitates a remandment for the purpose of requiring plaintiffs to again petition the county board for a rezoning, so that body could consider the question in the light of the present circumstances, has not been answered by plaintiffs. We are of the opinion, however, that the vacation of the platted but unopened streets, and the provisions of the agreement with intervenors do not accomplish any substantial or fundamental change in the character of the proposed use, and that resubmission of the question to the legislative body is therefore unnecessary. Plaintiffs sought an amendment permitting commercial use for shopping center purposes. This was denied, and no useful purpose would be served by requiring reconsideration solely because of minor variations in the physical facts where the fundamental question remains unchanged. (*Wiercioch* v. *Village of Niles,* 27 Ill.2d 363.) To do so would defeat one of the purposes of the *Bright* doctrine,

(*Bright* v. *City of Evanston,.* 10 Ill.2d 178) which was to prevent delay in the administration of justice. *Van Laten* v. *City of Chicago,* 28 Ill.2d 157.

While some dispute exists as to the return which might be expected from residential development of the 29-acre tract, it is apparent, even from the testimony of defendant's real-estate expert, that no real profit can be secured from this type of use unless the developer undertakes to build houses or do so through contractors. Plaintiffs' witnesses agree that residential development is not feasible, and it seems apparent to us that the proximity of the commercially zoned 8½-acre tract adjoining the subject property is an important factor in determining whether maintenance of the residential restriction upon the contiguous 29-acre tract is substantially related to the public interest.

While defendant maintains that the existence of a difference of opinion as to the reasonableness of the ordinance necessitates affirmance of the legislative judgment, we have said: "Difference of opinion does not render plaintiff's evidence unbelievable or require a finding that the reasonableness of the ordinance is debatable." (*La Salle Nat. Bank of Chicago* v. *County of Cook,* 12 Ill.2d 40, 47; *People ex rel. Chicago Title and Trust Co.* v. *Village of Elmwood Park,* 27 Ill.2d 177.) "The general rules of zoning law are so familiar as to be axiomatic, and their repetition is no longer necessary for an adequate disposition of questions such as presented here. The issues in this type of litigation are concerned not so much with the development of law as with variations in facts; and the basic problem, like that in negligence and compensation cases, is simply one of applying the same rules, over and over, to different factual situations." *Weglarz* v. *Village of Villa Park,* 21 Ill.2d 202, 204; *People ex rel. Chicago Title and Trust. Co.* v. *Village of Elmwood Park,* 27 Ill.2d 177.

Defendants point out that any financial loss to plaintiffs if commercial use is denied has been occasioned by their own

action in purchasing with knowledge of the residential limitations. However, one who purchases property in the face of a pre-existing classification, while not favorably situated, may still attack the validity of the restriction. *Chicago Title and Trust Co.* v. *Village of Wilmette,* 27 Ill.2d 116.

The basic issue presented is whether justification for the limitations of the ordinance here involved can be found in the promotion of the public health, welfare, morals or safety. We believe that, under the circumstances established by this record, plaintiffs have met their burden of establishing the unreasonableness and invalidity of the ordinance as applied to the subject property. Plaintiffs' witnesses testified that the tract in question is not economically susceptible to residential development. Defendant's witness, while testifying to a different development method under which some profit could, in his opinion, be made, envisioned construction of homes by the developer as a condition of profitable improvement, and predicated his conclusions on a substantially lower land acquisition price than that paid by plaintiffs. He conceded that the presence of the commercially zoned 8½-acre tract affected the value of the larger parcel for residential purposes.

In our judgment a fair appraisal of the evidence as to the area indicates a growing trend to commercial development to the south and east as testified to by the witnesses and demonstrated in the numerous rezonings to permit a commercial use within several blocks of the subject tract. This, coupled with the commercial status of the contiguous tract, and the doubtful possibility of profitable use of plaintiffs' property for residential purposes, demonstrates that perpetuation of the residential classification as to the 29-acre parcel would be unreasonable and confiscatory. Shortly stated, the evidence clearly establishes a diminution of plaintiffs' land value with no corresponding benefit of either a public or private nature.

We are of the opinion that the trial judge was correct

in holding the ordinance as here applied was unconstitutional, and the decree of the circuit court of Peoria County is therefore hereby affirmed.

*Decree affirmed.*