**Maywood Proviso State Bank, as Trustee Under Trust #1195, not Personally and Warren Swiech, Plaintiff-Appellees, v. Village of Berkeley, Cook County, Illinois, Defendant-Appellant.**

Gen. No. 49,672.

First District, Third Division.

January 7, 1965.

John P. Murray and Vincent Pascucci, of Chicago, for appellant.

James E. Noland, of Chicago (Edmund M. Tobin, of counsel), for appellees.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The defendant, Village of Berkeley, appeals from a judgment which declared the village's zoning ordinance unconstitutional and void in its application to certain property held in trust by the plaintiff, Maywood Proviso State Bank, under which trust the plaintiff, Warren Swiech, has the sole beneficial interest.

The plaintiff's complaint raised constitutional questions which were sustained by the trial court's decision and the appeal, accordingly, was first directed to the Supreme Court. The court evidently was of the opinion that the case presented no substantial or fairly debatable question arising under the constitution and transferred it here. First Nat. Bank & Trust Co. v. City of Evanston, 30 Ill2d 479, 197 NE2d 705 (1964).

Warren Swiech purchased the property in question in January 1962. He was an experienced real estate builder and broker and had full knowledge that the property had an "A" zoning classification which permitted single-family residences. On May 4, 1962, the plaintiffs petitioned the Zoning Board of Appeals of the village for reclassification to a "B" use, which would permit multiple-family dwellings. The Board of Appeals agreed with the plaintiffs and made such a recommendation to the Board of Trustees. The village trustees rejected the proposed reclassification and this action for declaratory judgment followed.

The property consists of two vacant, irregularly shaped parcels of land, one of which lies southeast and the other southwest of the intersection of Taft and Maple Avenues. Taft Avenue, a north and south street, and Maple Avenue, an east and west street, are both improved with single-family residences. The

86

parcel to the east of Taft and south of Maple is bounded on the west by Taft Avenue, on the north by the dwellings along Maple Avenue, on the east by the Village of Hillside and on the south by the elevated right of ways of two railroads: the Chicago and Great Western and the Aurora, Elgin and Chicago. The latter railroad is inoperative and its tracks have been removed. The parcel to the west of Taft and to the south of Maple is bounded on the east and north by the homes along Taft and Maple Avenues, on the west by vacant land which extends to the Illinois Tri-State Tollway and on the south by the railroad right of ways and by Railroad Avenue, a dedicated but unbuilt street.

The residences on Taft Avenue are quite old, those on Maple are both old and new. The entire area north of Maple is 100 percent residential with the exception of three or four legal, nonconforming uses. The residences in this area are from five to fifty years old and many of them have large, deep lots. That part of Hillside which adjoins the property in question on the east is also 100 percent residential; the homes are new and are built up to and along the railroad right of ways.

South of these right of ways, which are six to eight feet above the street level and each 100 feet wide, commercial use is permitted in both the villages of Berkeley and Hillside. In Berkeley this area is heavily residential and many of the homes face the railroad tracks.

In their complaint the plaintiffs asserted that the subject parcels were not suited for single-family residences because of their size and the character of the property adjacent to them, specifically the railroad tracks. They further asserted that if the parcels were

rezoned "B" their value would be ten times greater than under the present "A" zoning and that they would be utilized for their highest and best use.

A realtor, a real estate appraiser and the secretary of the Zoning Board of Appeals of Berkeley, who is also a builder of homes, testified for the plaintiffs before the master in chancery to whom this case was referred. They supported the assertions in the complaint that the railroad tracks were an impediment to the sale of single-family homes and that the highest and best use of the property would be for multiple housing. The appraiser gave his opinion that the value of the property under single-family zoning was $86,000 and under multiple zoning would be $250,000. Swiech testified in his own behalf but was not asked what he paid for the tracts. He told his plans for developing the property, and exhibits were introduced into evidence showing the type of apartment buildings he intended to erect. He testified that he had built several homes on the property. He said that, up to the date of his testimony [February 1963], he had been unable to sell two of the homes which had been completed in June 1962. However, he also said that within the last two months he had built three other homes which had been sold.

A trustee of the village and the chairman of its zoning committee testified that the majority of the people in the vicinity of the property were against the proposed rezoning. Another witness, a real estate broker and a member of Berkeley's Zoning Board of Appeals (who had not participated in the hearing before that board) testified that if the property were zoned for multiple dwellings it would depreciate the value of the single-family residences and would decrease the desire of the people to live in that neighborhood. He agreed that the value of the property would be greater if it were rezoned.

88

The principles of zoning law which apply to a case of this kind have been frequently enunciated. La Salle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 145 NE2d 65. There is a presumption that a zoning ordinance is valid (Martin v. City of Rockford, 27 Ill2d 373, 189 NE2d 280) and the burden of overcoming the presumption is upon the person who assails it. Skrysak v. Village of Mount Prospect, 13 Ill2d 329, 148 NE2d 721. Zoning regulations must have a real and substantial relation to the public health, safety, morals or welfare (Bolger v. Village of Mount Prospect, 10 Ill2d 596, 141 NE2d 22) but the proof that an ordinance does not must be clear and convincing. Westfield v. City of Chicago, 26 Ill 2d 526, 187 NE2d 208. Of paramount importance is the question as to whether the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established. Chicago Title & Trust Co. v. City of Harvey, 30 Ill2d 237, 195 NE2d 727. If the public gain is small when compared with the hardship imposed upon the individual property owner the restriction constitutes an unreasonable exercise of the police power. Weitling v. County of Du Page, 26 Ill2d 196, 186 NE2d 291. However, the mere fact that a plaintiff's land would be worth more if the existing ordinance is invalidated is not determinative and does not necessarily justify a conclusion that the ordinance is confiscatory. Reeve v. Village of Glenview, 29 Ill2d 611, 195 NE2d 188.

In Urann v. Village of Hinsdale, 30 Ill2d 170, 195 NE2d 643, the court applied these principles to facts and contentions that were almost identical with those of the present case. The plaintiffs owned 32 vacant lots in three separate parcels, all zoned for single-family residence; the parcels formed part of a larger district of the same zoning classification. The homes in the district were both old and new and there were

a few nonconforming uses. The elevated tracks of the main line of the Chicago, Burlington & Quincy Railroad were along one side of the rectangular-shaped property. Across the tracks a small area was zoned for commercial and industrial use but this area was surrounded by residences. One of the plaintiffs, who had been in the business of buying, improving and selling vacant real estate for 20 years, and two other witnesses testified that the highest and best use of the property was for multiple-family or business use, and that its value would be three times greater for this purpose than for single-family use. Their opinions were based on the presence of the railroad tracks and on the commercial-industrial area across the tracks. The court rejected the contention that the railroad tracks and the commercial and industrial area made the zoning unreasonable and the property unsuitable for single-family residential purposes. The court observed that the tracks were a logical line of demarcation between the residential and industrial areas and did not in themselves fix the character of the plaintiffs' property or cause its residential classification to be unreasonable. The court commented that the presence of single-family residences facing the railroad tracks on nearby properties detracted from the plaintiffs' claim that the tracks rendered their property unfit for such use. The court further observed that the fact that some of the homes in the vicinity were not new did not exclude them from the protection of the zoning laws. The court affirmed the judgment of the trial court which had upheld the validity of the zoning ordinance.

■ ■ The decision in Urann is determinative of the present case. The principal differences between Urann and this case are that in Urann the area beyond the tracks was zoned for industrial use while in this case it is not, and in Urann residences were

on three sides of that property while in this they are on two sides and the third side of the property faces vacant land and the tollway. The first difference weakens rather than strengthens the plaintiffs' position and the second is unimportant. The presence of a tollway is of itself no reason for changing a residential zoning classification. In La Salle Nat. Bank v. Village of Western Springs, 30 Ill2d 340, 196 NE2d 680, the court said: "Many homes have been constructed adjoining tollways in metropolitan Cook County, thereby indicating that adjacent tollways with their right of ways do not preclude residential development."

The plaintiff, Swiech, bought this property with his eyes open. From his long experience in the realty business he must have known with reasonable certainty whether the property would lend itself to single-family residences and whether they would be marketable when built. If he thought when he purchased it that it was unsuitable for this purpose, then he took a business risk that the prevailing zoning could be changed to one more favorable. His quick move to alter the zoning, just four months after he made his purchase, supports this supposition. In American Nat. Bank & Trust Co. of Chicago v. City of Chicago, 30 Ill2d 251, 195 NE2d 627, the plaintiff, who was a realtor with more than 20 years experience, bought the property which he sought to have rezoned for multiple-apartment use with knowledge of its single-family residential classification. He, too, emphasized the lack of marketability for single-family homes. The court said: "While a purchaser is not precluded from challenging a pre-existing zoning classification, his purchase in the face of the zoning restrictions, is a factor to be considered." What was said in Cities Service Oil Co. v. County of Lake, 26 Ill2d 176, 186 NE2d 265, is apropos: ". . . any fi-

91

nancial disadvantage that may result to the plaintiff from the denial of his petition is a self-created one."

The hardship upon the plaintiffs, if any, does not justify our holding that the zoning ordinance of Berkeley is arbitrary, unreasonable or invalid as applied to their property. The decree of the Circuit Court is reversed.

Reversed.

SULLIVAN and SCHWARTZ, JJ., concur.