Edward Gedmin, Annabelle Gedmin, His Wife, Emma Kosiak and Michael Kosiak, Her Husband, David M. Markle and Markle Construction and Development Corp., an Illinois Corporation, Plaintiffs-Appellees, v. City of Chicago, a Municipal Corporation, Defendant-Appellant.

Gen. No. 50,427.

First District, Fourth Division.

August 18, 1967.

Rehearing denied December 28, 1967.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellant.

Maurice J. Nathanson, of Chicago (Marvin J. Glink, of counsel), for appellees.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

In a declaratory judgment action, the trial court entered an order declaring invalid and restraining enforcement of defendant's Zoning Ordinance insofar as it

presently classifies plaintiffs' property as "R–2" and "R–3" and thereby prevents development of the subject property within the "R–4" classification. Defendant appeals, contending: (a) plaintiffs failed to adduce clear and convincing proof that the ordinance is invalid as applied to the subject property; (b) the surrounding uses being of paramount importance, the subject property is logically a part of a low-density residential area, and is therefore properly zoned in part for single-family use and in part for low-density multiple-family use; (c) the plaintiffs have not sustained any hardship due to the present zoning, and mere loss of potential profit which might be realized through zoning change does not, in itself, justify nullification of the ordinance; (d) owners of single-family residences and low-density apartments in the neighborhood, who purchased or built their homes in reliance upon the existing "R–2," "R–3" classifications, have a right to rely upon their continuance.

The subject property, located in Chicago, has been divided into two parcels for analysis. Parcel #1 is bounded on the north by 94th Street, on the east by Morgan Street, on the south by 95th Street, and on the west by Genoa Avenue, a diagonal street which causes this parcel to be shaped somewhat like a triangle, with 95th Street as the base. The parcel contains about 86,000 square feet and is presently unimproved except for several old buildings, including a barn, a 2-story brick residence fronting on 95th Street, and 2 used-car sales office shacks.

Parcel #2 is across the street, immediately east of Parcel #1, at the corner of 95th and Morgan Streets, in the block bounded by 94th Street on the north and Sangamon Street on the east, with a frontage of 125 feet on 95th and a north-south dimension of about 139 feet along Morgan. It contains about 17,500 square feet and is presently improved with a 2-story frame dwelling

facing 95th Street and a frame garage at the northeast corner of the tract.

In its frontage along the north side of 95th Street, Parcel #1 is zoned "R–3," General Residence, to a depth of 139 feet. The remainder of the parcel is "R–2," Single-Family Residence. Parcel #2 is zoned "R–3."

To the west, Parcel #1 is separated from the Chicago, Rock Island & Pacific Railroad, which runs at grade, by the property of the H. Lang & Son Coal Company and by the width of South Genoa Avenue. The 95th Street frontage of the coal company is improved with a building containing general offices, salesrooms, and a display of furnaces and other equipment. To the north of the building are the company's yards. North of 94th Street is a factory district facing directly across the street from Parcel #1 and immediately adjacent to the railroad. In this area are several large one-story industrial buildings. This industrially zoned area continues to the north and east of the subject properties in a triangularly shaped area, with 94th Street as the base, bounded by Sangamon Street on the east, diagonally on the west by the railroad tracks, and by 92nd Street on the north. The large area of two and one-half blocks adjoining to the east is zoned "R–2" and improved by single-family residences. Along the railroad tracks to the north of the triangular industrial area and north of the "R–2" zone are more industrially zoned uses.

To the east of Parcel #1, in the same block with and north of Parcel #2, on Morgan Street between 94th and 95th Streets, and facing west (across Morgan Street, Parcel #1 and Genoa Avenue to the coal yard) are eight new single-family dwellings in an "R–2" zone. In the same block and to the east of Parcel #2, in an "R–3" zone fronting on 95th Street, are a number of multiple dwellings, some of which are of recent construction. In

the next block east, also fronting on 95th Street, are three more new "R–3" multiple dwellings.

To the south of the subject properties, across 95th Street, is the ten-acre Oakdale Park, an open space with recreational facilities, improved with a maintenance structure and conforming to the requirements of the "R–3" classification. Between Genoa Street, which bounds the park on the west, and the railroad tracks is a one-block-wide strip of industrial zoning, presently occupied by a gasoline service station. Except for a strip of restricted business zoning fronting on Halsted Street, three blocks to the east of Sangamon, and 103rd Street to the south, the entire area south of 95th Street, bounded by those streets and the railroad tracks to the west, is zoned "R–2" single-family residences.

Plaintiffs propose to raze the existing structures on both parcels and construct four 2-story apartment buildings with a total of 128 dwelling units distributed as follows:

Parcel #1—Building "A"—near 95th Street: 57 Units
 Building "B"—in center of block: 26 Units
 Building "C"—toward 94th Street: 23 Units
Parcel #2—Building "D": 22 Units

As the land is presently zoned, plaintiffs would be restricted to 22 dwelling units on the "R–3" portion of Parcel #1; to 7 separated single-family residences on the "R–2" portion; and to 12 dwelling units on the entirely "R–3" Parcel #2, for a total of 41 dwelling units, as compared with 128 which plaintiffs would build if the zoning were changed to "R–4."

We agree with defendant that the plaintiffs have not satisfied their burden of overcoming with clear and convincing proof the presumptive validity of the Zoning Ordinance as applied to the subject properties. In sustaining single-family residence zoning against a pro-

298

posed multiple-family use, the court said in Urann v. Village of Hinsdale, 30 Ill2d 170, at 174–175, 195 NE2d 643:

> There is a presumption of validity in favor of a zoning ordinance adopted pursuant to a legislative grant and one who attacks such an ordinance has the burden of overcoming the presumption with clear and convincing proof that the ordinance is arbitrary and unreasonable, and is without substantial relation to the public health, safety, morals and welfare. (Citations.) Whether a zoning classification bears a substantial relation to the public welfare depends upon a number of factors, among them being the character of the neighborhood and the suitability of the property for the zoned purpose, (citation) and it is plaintiffs' contention that the presence of the railroad tracks and the industrial area to the north makes the classification of their property unreasonable and renders it unsuitable for single-family residential purposes.

After describing the single-family residential uses on three sides of the subject property in Urann, the court held (at page 175) that the railroad tracks and industrial uses on the other side did not fix the character of plaintiffs' property or cause the classification to be unreasonable, and, further, that the tracks served as a logical line of demarcation between the residential and industrial zones. This court applied Urann to sustain single-family zoning against a proposed multiple-dwelling use in Maywood Proviso State Bank v. Village of Berkeley, 55 Ill App2d 84, 90–91, 204 NE2d 144:

> . . . The principal differences between Urann and this case are that in Urann the area beyond the tracks was zoned for industrial use while in this case it is not, and in Urann residences were on three

sides of that property while in this they are on two sides and the third side of the property faces vacant land and the tollway.

In the instant case, the coal yard across the street from Parcel #1 separates it from the railroad tracks. Except for this strip of land, which we do not find determinative of the character of either the general residential area or of the subject properties, the rest of the industrial uses to the north are within a well-defined area bounded by the railroad tracks on the west, by 94th Street on the south, and by Sangamon Street on the east, north to 92nd Street. Outside of these boundaries, the character of use is markedly single-family and low-density multiple-dwelling, and it is from these uses that the character of both the area and the subject properties is derived. Cosmopolitan Nat. Bank v. City of Chicago, 22 Ill2d 367, 373, 176 NE2d 795; American Nat. Bank & Trust Co. of Chicago v. City of Chicago, 30 Ill2d 251, 253, 195 NE2d 627.

Of further significance in determining the character of the area is the factor of newly constructed "R–2" and "R–3" housing in addition to the large number of such dwelling units already in existence. As noted, these structures abut or face the subject property and reflect a trend of development conforming to the existing uses and are thus strong evidence in support of the suitability of the existing zoning. Sulzberger v. County of Peoria, 29 Ill2d 532, 541, 194 NE2d 287. In fact, in the two-square-block area bounded by Morgan, 95th, Peoria and 94th Streets, Parcel #2 is the only undeveloped portion, and all the rest of that area has been improved with dwellings which conform to the requirements of the existing ordinance.

New construction is also particularly applicable to another consideration upon which we base our opinion:

300

Other persons living in the single-family residence district involved have a right to rely upon the precept that the classification will not be changed within the district unless the change is required for the public good, . . . . (Urann, supra, at p 176; see also Bolger v. Village of Mount Prospect, 10 Ill2d 596, 603.)

Plaintiffs' witnesses testified that an "R–4" use would be for the public good, as it would serve as a buffer or transitional use between the industrial areas to the west and north of the subject properties and the residential zones to the northeast, east and south. One of those experts, in testifying that the highest and best use of the subject properties would be served by an "R–4" use, based his opinion on the criteria of transportation, shopping facilities and open space for recreation. He also stated that were the property closer to the "Loop," the same criteria would justify an even higher-density "R–5" classification.

Defense experts also testified in favor of a transitional use, but opined that "R–3" was the proper classification. One such witness characterized the proposed "R–4" development as "inconsistent with the general residential uses in the area because the existing uses are overwhelmingly single-family homes." He also stated that not only would "R–3" better serve the need for a buffer, but that "R–4" would have a detrimental effect in causing a "jump" in area density from 8 dwelling units per acre under "R–2" and 17 units per acre under "R–3" to a density of 80 units per acre under "R–4."

█ The criteria utilized in the testimony of plaintiffs' witnesses to justify an "R–4" use apply as well to the existing classifications. That the area has adequate shopping, transportation and recreational facilities to accommodate a higher-density "R–4" development, is

301

not a convincing argument against the present lower-density classifications. The question of whether "R–4" would or would not be detrimental to the surrounding area is not determinative of whether the present "R–2," "R–3" classifications are unreasonable or unrelated to the public welfare. The question, as noted, is, rather, whether the plaintiffs' evidence clearly and convincingly overcomes the presumption of validity which attaches to the legislative judgment:

> Where it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. (Standard State Bank v. Village of Oak Lawn, 29 Ill2d 465, 470; see also Kioutas v. City of Chicago, 59 Ill App2d 441, 458.)

█ In this case, having been attacked only with differences of opinion, the legislative judgment that the present zoning classification satisfies the needs of the area (and that a higher-density use is not necessary) is thus conclusive of the question. As the Supreme Court, in sustaining the density restriction of an "R–3" zoning against a proposed "R–4" use, said in Lapkus Builders, Inc. v. City of Chicago, 30 Ill2d 304, 309–310, 196 NE2d 682:

> The issue here is as to whether the density restrictions imposed by the zoning ordinance are reasonably related to the health, welfare, morals and safety of the community. The presumption is that they are. (Exchange Nat. Bank of Chicago v. County of Cook, 25 Ill2d 434.) Unless the proof is sufficient to overcome the presumption and establish that the questioned restrictions are arbitrary or capricious as applied to plaintiff's property, they will be upheld. (Exchange Nat. Bank of Chicago v.

City of Chicago, 28 Ill2d 341.) The general principle of limitation upon intensity of use as embodied in the Chicago zoning ordinance of 1957 was upheld by this court in a case quite similar to this. Cosmopolitan Nat. Bank of Chicago v. City of Chicago, 22 Ill2d 367.

It is clear that except for the commercial strip along the west side of Kedzie Avenue the general area around the subject property is low density residential in character. Single-family residences of a value of $20,000–$25,000, plus several conforming apartment buildings comprise the dwellings in the area. The fact that the property is bounded on three sides by conforming dwellings, particularly the two proximate multiple-unit apartments, plus the testimony of residents of the area, indicates that those who have already built and settled the area have acquiesced in and relied upon the ordinance. Moreover, plaintiff has failed to point to a single dwelling in the area of the subject property which does not conform to the density restrictions of the ordinance.

██ According to the testimony of witnesses for both sides, the value of the subject properties under existing zoning would be about $62,000–$63,000, and were the properties developed under the proposed change to "R–4," the value would be about $125,000–$127,000. Nevertheless, as recognized by plaintiffs' brief, their loss in potential property value if there were to be no change in zoning, is "but one factor to be considered in connection with the validity of the particular restriction." And we do not find this factor to weigh sufficiently in favor of the plaintiffs to justify affirmance of the judgment declaring the ordinance invalid. Further, we consider it significant that plaintiffs' proposal was developed

and advanced with full knowledge of the existing restrictions.

> While a purchaser is not precluded from challenging a pre-existing zoning classification, his purchase in the face of the zoning restrictions, is a factor to be considered. (American National Bank & Trust Co. v. City of Chicago, 30 Ill2d 251, 254, citing Vedovell v. City of Northlake, 22 Ill2d 611; see also Maywood Proviso State Bank v. Village of Berkeley, supra, at pp 91–92.)

Simply stated, the reason this is a factor to be considered is that under these circumstances any financial loss or disadvantage to a party incurred by reason of zoning restrictions is self-created (Cities Service Oil Co. v. County of Lake, 26 Ill2d 176, 186 NE2d 265, cited in Maywood Proviso State Bank v. Village of Berkeley, 55 Ill App2d 84, 91–92, 204 NE2d 144), and therefore ". . . it can hardly be found that the ordinance has diminished the value of plaintiff's property or is confiscatory." Elmhurst Nat. Bank v. City of Chicago, 22 Ill2d 396, 402–403, 176 NE2d 771.

 We make one further point. During testimony, one of the expert witnesses for the defense conceded that he would not favor the present "R–2" zoning on the northern portion of Parcel #1, as he considered the highest and best use for that property would be achieved through use of "R–3" to meet the need for a buffer zoning as discussed above. It may therefore be said (even though plaintiffs have made it clear that they do not seek an "R–3" classification), that the finding of the trial court which declared the ordinance invalid as it applies to the "R–2" portion of Parcel #1 should be affirmed since it was not contrary to the manifest weight of the evidence. Kioutas v. City of Chicago, 59 Ill App2d 441, 452, 208 NE2d 587. However, were we to affirm invalidation of the "R–2" classification while also re-

versing the grant of permission to construct within the limitations of "R–4," the result would be to leave the property unzoned, and this should not be done. Although our research has not revealed any authority on this precise question, we refer to the decision of the Supreme Court in Sinclair Pipe Line Co. v. Village of Richton Park, 19 Ill2d 370, 377–380, 167 NE2d 406, where "[t]he evils in a decision which merely invalidates existing zoning were clearly pointed out . . . ." Dixon v. County of Kane, 77 Ill App2d 338, 342, 222 NE2d 354. Nor would we consider it proper for this court to assume the legislative function of determining the zoning classification to be applied to the subject property under such circumstances. Dixon v. County of Kane, supra, id.; Fiore v. City of Highland Park, 76 Ill App2d 62, 76, 221 NE2d 323 and cases cited therein.

> The most that a court may do after declaring an existing zoning ordinance void as applied to certain property is to find that the specific use contemplated by the owner is reasonable and may be permitted. (Fiore, supra, id.)

We therefore decide that the question of whether that part of the subject property sho ld or should not be zoned "R–3" instead of the present "R–2," is not before us. Otherwise, for the reasons stated above, we hold that the plaintiffs have not satisfied their burden of overcoming with clear and convincing proof the presumptive validity of the present zoning classifications applicable to both Parcels #1 and #2, and the judgment of the trial court, being contrary to the manifest weight of the evidence, is reversed. Kioutas v. City of Chicago, 59 Ill App2d 441, 452, 458, 208 NE2d 587.

Reversed.

DRUCKER and McCORMICK, JJ., concur.