**Charles Jans and Anna Jans, His Wife, et al., Plaintiffs-Appellees, v. City of Evanston, a Municipal Corporation, Defendant-Appellant.**

**Gen. No. 49,652.**

First District, Fourth Division.

September 9, 1964.

Rehearing denied October 21, 1964.

Jack M. Siegel, Corporation Counsel, and Russell A. Behrens, Assistant Corporation Counsel, of Evanston, for appellant.

Bernard Allen Fried, of Chicago, for appellees.

MR. JUSTICE DRUCKER delivered the opinion of the court:

The defendant, City of Evanston, appeals from a judgment declaring that its zoning ordinance is unreasonable, arbitrary, confiscatory, unconstitutional and void as regards plaintiffs' property.

The action was commenced by the filing of a complaint seeking a declaratory judgment and other relief in June of 1962. Plaintiffs Charles and Anna Jans and Michael Leider alleged that the were the owners of certain property within the corporate limits of the defendant city and plaintiffs Roy Gottlieb and Kenneth Tucker alleged that they were contract purchasers of this land from the above-mentioned owners. The complaint further stated that on November 21, 1960, the city adopted a zoning ordinance which clas-

sified the property of the plaintiffs as "R-2" or a single-family residential district but which permitted the operation of nurseries and greenhouses as "special uses"; that the property was and is being used for greenhouse purposes as it had been for the past forty years; and that this use of the property was highly profitable to the plaintiff owners and accordingly that "the value of the property to the plaintiff owners in relation to the continued operation of the property for greenhouses, is great."

The plaintiff owners then alleged that a sale of the property under the applicable zoning could not possibly net them a return consistent with the present value of the land as used for greenhouse purposes. They alleged that the use was in fact commercial and that the price a builder could reasonably afford to pay for the property for use for single-family construction "would be wholly inadequate to interest the owners to discontinue their present commercial and wholesale business."

The complaint then set out a detailed description of the property in question, which consists of approximately 300,000 square feet (or slightly less than seven acres) on the south side of Oakton Street between Florence Avenue and Asbury Avenue, and further alleges that the owners, Mr. and Mrs. Jans and Leider, entered into a contract with plaintiffs Gottlieb and Tucker wherein they agreed to sell the property for a price * substantially in excess of that which they could receive if the property were to revert exclusively to R-2 zoning.

The complaint further set forth plaintiffs' attempt to secure a change in zoning before the Evanston Zon-

---

* Mr. and Mrs. Jans were to receive $180,000 for 4.1 acres. Leider's agreement was for 40% of the profits of the project to be built on his property. Both agreements were contingent on a rezoning of the property as R-6 (multiple family residence district).

ing Amendment Committee on December 14, 1961, and the Committee's unanimous recommendation that the application be denied. This ruling was subsequently confirmed by the City Council. The complaint averred that plaintiffs had thus been deprived of their property without due process of law and without compensation, contrary to the provisions of the United States and Illinois constitutions.

The answer of defendant admitted the zoning ordinance and the area, location and dimensions of the subject property. It alleged that the land east of the subject property, improved with a supermarket, has been zoned commercially since 1921 and that for more than forty years the area surrounding the subject property has been maintained as a single-family use with the exception of several two-family uses which existed prior to the adoption of any zoning ordinance. Defendant's answer further stated that it was not familiar with any contract of sale between the owners and Roy Gottlieb and Kenneth Tucker and asserted that contract purchasers did not have standing to challenge the constitutionality of a zoning restriction.

Finally, the answer of the city denied that there had been a deprivation of property without due process of law and further denied that "highest and best use" of the subject property was for multiple dwellings (R–6) as alleged by plaintiffs.

The issue having been joined on the question of whether the R–2 classification of this property subject to the special use for greenhouses was confiscatory and void, the matter was referred to a master for his factual determinations and legal conclusions. The master heard evidence during July of 1962 and also viewed the subject property and the surrounding area pursuant to stipulation by the parties.

The master found, inter alia, that the northern boundary of the subject tract is Oakton Street, a

heavily trafficked thoroughfare carrying a flow of approximately 10,000 vehicles every day; that the property immediately to the east of subject site between it and Asbury Avenue is devoted to commercial uses, consisting of a supermarket, gasoline station and cleaning establishment; that the northeast corner of Oakton Street and Asbury Avenue is devoted to single-family residential use; that the northwest corner is the situs of a three-story L-shaped nursing home; that the north side of Oakton is devoted to single-family use except for five two-family dwellings; that both sides of Florence Avenue, between South Boulevard (one block north of Oakton Street) and Kirk Street (one block south of Oakton), except for the subject site, are improved with single-family residential dwellings; that both sides of Ashland Avenue between the subject site and Kirk Street are improved with single-family residences except for one two-family dwelling; that Wesley Avenue between the subject site and Kirk Street is improved with greenhouses and nurseries and six single-family residential structures; that the "general area beyond the area immediately surrounding the subject premises" for a radius of at least several blocks is devoted primarily to single-family residential improvements, with certain exceptions.

The master further found that the proposed development as described in the testimony of plaintiffs' architect contemplates twelve separate buildings consisting of twenty dwelling units in each building; that the units would be broken down into twelve two-bedroom apartments and eight one-bedroom apartments; that there would be two entrances on Oakton Street and one entrance on Florence Avenue; that the project would include 260 parking spaces and approximately 30% of the area would be covered by buildings.

The master further found that under the general classification scheme of the Evanston Zoning Ordinance the land immediately in the vicinity of the subject tract was classified as follows: Both sides of Asbury Avenue (the eastern boundary of the property in question) are zoned for two-family dwellings. The north side of Oakton and the south side of South Boulevard, between Asbury and Wesley Avenues, are zoned for two-family dwellings. The southeast and southwest corners of Oakton and Asbury are zoned for commercial use; and all the remaining area between Asbury Avenue, South Boulevard, Mulford Street and Dewey Avenue, is zoned for R–2 single-family residential use.

After setting forth in detail the evidence of the witnesses for plaintiffs and defendant, the master concluded that "to restrict the plaintiffs from erecting the project which they propose would constitute an invalid exercise of the police power." The master stated that in reaching this conclusion he considered that the owner could not build single-family residences with any reasonable expectancy of a profit; that considering the surrounding physical area and the size of the greenhouse operation presently maintained on the premises, the distinction between the permitted "commercial operation" (the greenhouses) and the forbidden residential one (multiple family dwelling units) is unreasonable; that on the particular tract in question he thought it unreasonable to permit greenhouses and forbid multiple dwelling units; that the combination of factors including, but not limited to the nature of Oakton Avenue, the commercial uses adjacent to the property, and other nonresidential uses in the area, "militate against a finding that R–2 restrictions are reasonable"; that the plan of multiple family dwellings submitted by plaintiffs "constitutes a fair and reasonable use of the premises and . . .

66

mitigates any adverse effect which an unrestricted R–6 use might otherwise have"; and that the proposed project would more likely constitute a benefit than a detriment to the surrounding community.

The master concluded by recommending to the court that the zoning ordinance of the city, insofar as it purported to prevent plaintiffs from constructing the proposed project on the subject premises, be considered void and of no effect as it was unrelated to the public health, safety, morals or welfare and was therefore an invalid exercise of the police power; and further, that plaintiffs were entitled to construct the proposed project so long as it substantially conformed to the plans which they submitted.

The Circuit Court adopted the findings of fact and conclusions of law submitted by the master without hearing further evidence and entered an order to this effect. The defendant appealed directly to the Supreme Court and the appeal was transferred to this court pursuant to the decision in First Nat. Bank & Trust Co. v. Evanston, 30 Ill2d 479, 197 NE2d 705 in which Mr. Justice Schaefer speaking for the court ruled that zoning cases affecting the classification of a single subject property did not present a "substantial constitutional question" sufficient to merit a direct appeal to the Supreme Court.

█ The primary point raised by defendant in this appeal is that plaintiffs failed to overcome the presumption of validity which attaches to the zoning ordinance of the city. The law in this area has been clearly defined by the Supreme Court. In the recent case of Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96, for example, that court at page 273 stated:

> A presumption exists in favor of the validity of a zoning ordinance and the one who attacks such an ordinance has the burden of overcoming the presumption by proving with *clear and convincing*

> *evidence* that, as applied to him, it is *arbitrary and unreasonable* and is without substantial relation to the public health, morals, safety and welfare. (Emphasis added—citations omitted.)

In other words, a party challenging the validity of a zoning ordinance has the burden of showing by evidence that is clear and convincing that the city has abused its legislative discretion in classifying property in a certain manner. Such proof must establish not merely that the property *could* reasonably be classified otherwise, nor indeed that the court *would* classify it otherwise; rather, it must show that the legislative decision as to the property is "clearly unreasonable" (Exchange Nat. Bank of Chicago v. Cook County, 25 Ill2d 434, 441, 185 NE2d 250) and a "clear abuse of discretion" (Trendel v. County of Cook, 27 Ill2d 155, 161, 188 NE2d 668).

We feel there is no need to recite the evidence in detail in this opinion. However, the evidence includes many statements by witnesses that the area to the north, south and west of the subject property was predominantly single-family residential use, interspersed with some two and three-family uses, and that the area to the east contained the commercial service establishments of a supermarket (owned by one of the plaintiffs), a cleaning establishment and a gas station.

Dean A. Buckmaster, a witness for the defendant, testified:

> The outer perimeter of the subject property is 2,651 feet. Of that perimeter, 290.75 feet abuts commercial property, or about 11.3 percent. Approximately 380 feet or about 14.4 percent either abuts or faces on two-family zoning.* The re-

---

* Of the buildings on this 380 feet, only half are two-family residences; the other half, single-family homes.

68

maining uses that surround it, something over 2,000 feet or about 74 percent, abuts or faces R2 single-family dwelling property.

In their argument plaintiffs dispute the accuracy of the percentage figure but it is ascertainable from Plaintiffs' Exhibit 4 that of 21 homes on Oakton facing the subject property 16 are single-family units and of 38 residential structures in the area south of Oakton and north of Kirk between Dewey and Asbury, which comprises the peripheral area of the subject property, 37 are single-family homes.

Robert Wheeler, a city planner employed by the City of Evanston, testified that he was of the opinion that the highest and best use from a zoning and planning standpoint was for single-family residential purposes.

Carl Gardner, another city planner, also testified that single-family zoning was the highest and best use for the subject property; that the subject property could profitably be developed for single-family housing; that the area was presently predominantly single-family houses and that the proposed development was less compatible with the existing character of the neighborhood than were the greenhouses. He and Buckmaster both testified that the proposed multiple occupancy project would have a depreciating effect on property values in the area.

Several owners of single-family houses in the area testified that they had bought or built their homes in reliance on the single-family classification of the greenhouse property and that they believed that the proposed project would lower the value and attractiveness of their homes. At least two asserted that they had moved from multiple dwellings for the express purpose of getting away from that type of occupancy.

William Lawrence, a city planner called as a witness for the plaintiffs, testified that many of the houses in

the immediate vicinity of the subject property are valued in the $20,000 to $30,000 range with one house possibly being worth $40,000.

F. Gregory Opelka, a professional real estate appraiser familiar with Evanston real estate, was also a witness for plaintiffs and testified:

> This is a desirable piece of property for a builder in the R2, single-family category. This is a sound area in Evanston. It enjoys good demand for housing of any sort. It is a good place to live.

On cross-examination he stated that R–5 or R–6 development on the subject property would have a severe impact on the houses to the south and would "definitely scare me."

█ Such testimony certainly falls far short of proving that the judgment of the Evanston zoning authorities was arbitrary and unreasonable when they decided that the highest and best use of the property was for single-family residential use. The evidence is in conflict as to whether there would be a substantial difference in value of the property to the owners as between R–2 and R–6 zoning. The mere fact, however, that the property might be worth more to the owners if developed for multiple occupancy is not sufficient cause for us to superimpose our judgment of the nature of the neighborhood and the relative aesthetics of greenhouses and garden apartments. As the Supreme Court stated in Jacobson v. City of Evanston, 10 Ill2d 61, at page 68, 139 NE2d 205:

> From the record, we must conclude that the ordinance imposes no burdens on plaintiff, or his property, that are not common to the hundreds of other property owners and properties within the area included in the designated classification. The mere fact, if it is the fact, that plaintiff's property

might be worth more if a more intensive use were permitted, is not of itself sufficient to invalidate the ordinance, as this is true in nearly every case where the use of private property is restricted by zoning legislation. (First Nat. Bank of Lake Forest v. County of Lake, 7 Ill2d 213; Miller Brothers Lumber Co. v. City of Chicago, 414 Ill 162.)

Thus, the fact that the more intensive use for multiple family housing would be more profitable for the plaintiff owners is certainly not to be considered the controlling factor for, as stated above, such is the case in almost every instance of zoning restriction. First Nat. Bank of Lake Forest v. County of Lake, 7 Ill2d 213, 227, 130 NE2d 267.

■ Furthermore, the major diminution in value is not to the plaintiff owners, Jans and Leider, who admittedly operate profitable greenhouses on the property, but is rather to the contract purchasers, Gottlieb and Tucker. The law in this state is clear that a purchaser under a contract conditioned upon rezoning has no standing to attack the validity of the zoning ordinance. Clark Oil & Refining Corp. v. Evanston, 23 Ill2d 48, 51, 177 NE2d 191. For a cause of action to exist in the instant case, any loss occasioned by the single-family residential classification would have to be that of the current owners who by their own statement in the complaint admit that "the value of the property to the plaintiff owners in relation to the continued operation of the property for greenhouses, is great." There is apparently no great hardship imposed upon the plaintiff owners sufficient to lend any credence to the claim that their property is being confiscated without due process of law.

■ Plaintiffs contend that because Oakton Street is a heavily traveled thoroughfare and a commercial use adjoins the subject property, an R–2 classification

is unreasonable. Our Supreme Court has often held that a single-family classification is not invalid because it fronts on a heavily traveled street. Cosmopolitan Nat. Bank of Chicago v. Mt. Prospect, 22 Ill2d 463, 177 NE2d 365; Elmhurst Nat. Bank v. City of Chicago, 22 Ill2d 396, 176 NE2d 771. It has also decided that the single-family residential character of property will not be upset because of some commercial use near or even adjoining such property. De Bartolo v. Village of Oak Park, 396 Ill 404, 71 NE2d 693; Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96; Ryan v. City of Elmhurst, 28 Ill2d 196, 190 NE2d 737; Williams v. Village of Schiller Park, 9 Ill2d 596, 138 NE2d 500.

■ In conclusion, plaintiffs have shown that there exists at best a mere difference in opinion as to the highest and best use of the subject property. As discussed earlier, this falls far short of sustaining the burden of proof placed upon one challenging the constitutionality of legislative action. As was stated in Exchange Nat. Bank of Chicago v. Cook County, 25 Ill2d 434, at page 440, 185 NE2d 250:

> Where it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, *the legislative judgment must be conclusive* (Krom v. City of Elmhurst, 8 Ill2d 104). (Emphasis added.)

Plaintiffs contend as did the plaintiffs in Standard State Bank v. Village of Oak Lawn, 29 Ill2d 465, 194 NE2d 201, that the judgment should not be disturbed because it is not against the manifest weight of the evidence. We adopt the finding of the Supreme Court in that case on page 471:

> Plaintiff urges that the findings of the trial court cannot be disturbed unless contrary to the

manifest weight of the evidence. We agree that this is the rule. It is, however, clear to us that the evidence, when viewed most favorably to plaintiff, falls far short of overcoming the presumptive validity of the ordinance. At best, it accommodates a legitimate difference of opinion as to the reasonableness of the ordinance, and, under such circumstances, the legislative judgment must prevail.

The judgment of the Circuit Court is reversed.

Reversed.

ENGLISH, P. J. and McCORMICK, J., concur.