Avenue State Bank of Oak Park, Illinois, as Trustee Under Trust Agreement Dated February 15, 1961, and Known as Trust No. 162, and R. Busa & Sons, Inc., an Illinois Corporation, Plaintiffs-Appellees, v. Village of Oak Park, a Municipal Corporation, Defendant-Appellant.

Gen. No. 51,465.

First District, Fourth Division.

September 11, 1968.

Rehearing denied October 28, 1968.

Klein, Thorpe, Kasson & Jenkins, of Chicago (Arthur C. Thorpe, of counsel), for appellant.

Maurice J. Nathanson, of Chicago (Marvin J. Glink, of counsel), for appellees.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from a judgment of the Circuit Court of Cook County overruling the findings of a master in chancery and holding that the zoning ordinance of the Village of Oak Park is null and void in its application to their property.

Plaintiffs filed their complaint at law, and the amendment thereto, for a declaratory judgment, seeking a declaration that the Village of Oak Park Zoning Ordinance, as amended (and so far as it applies to their property), be declared null and void, alleging that said ordinance violates the Constitution of the United States and the Constitution of the State of Illinois.

The defendant filed its answer, alleging that the action of the Village Board in passing the zoning ordinance in question did not operate to deprive plaintiffs of their property without due process of law, but rather constituted a valid exercise of its legislative power in that such power was exercised reasonably and equitably with

the intent to promote and protect the public health, safety, comfort and general welfare. The matter was referred to a master in chancery before whom the following evidence was presented.

Plaintiff R. Busa & Sons, Inc., an Illinois corporation, is the owner in fee simple of Parcel 2 of the subject real estate located at 325 Oak Park Avenue, Oak Park, Illinois, having acquired title in 1958. Plaintiff Avenue State Bank of Oak Park, as trustee, holds the fee simple title to Parcel 1 of the subject real estate located at 319 Oak Park Avenue, Oak Park, Illinois, having acquired title in 1963. Plaintiff R. Busa & Sons, Inc. is the owner of the beneficial interest in the subject land trust. Now in existence (as it was when plaintiffs purchased the property) is the Village of Oak Park Zoning Ordinance, as amended, which classified plaintiffs' property as a "D" district, restricting its use to single and two-family dwellings. Mr. Busa, a building contractor with over 42 years of experience, testified that he purchased Parcel 2 under the mistaken belief that it was zoned for multiple units because the land was improved with what he thought was a rooming house. However, Richard Massell, a witness for the defendant, testified that Mr. Busa attended a meeting of the Zoning Commission on July 8, 1959, at which time a member of the commission asked him whether or not he had knowledge of the zoning of the property which he purchased on Oak Park Avenue prior to the time he purchased it, and Mr. Busa answered that he had. Mr. Busa knew of the zoning restrictions when he purchased Parcel 1.

Plaintiffs propose to build on their property a 3-story, 30-unit condominium apartment building of a total height of 29 feet. Facing another street to the south of plaintiffs' property and directly adjacent to it is a multiple-family "F" district in which there are apartment buildings with heights of over 40 feet. Bordering on the east of the subject property, with the exception of the First

332

Methodist Church building, is an area of single and two-family dwellings zoned "A" and "D" respectively, extending for over a mile. The area immediately to the north of the property, with few exceptions, is also developed with single-family and duplex residences, as is the area to the west. The subject property is contiguous to these residential areas to the north and west. There is not even an alley which would separate the single and two-family dwellings directly abutting plaintiffs' property from the proposed apartment building which would undoubtedly be constructed should plaintiffs' prayer for relief be granted.

George Kranenberg, a witness for plaintiffs, in addition to establishing his extensive background and experience in the field of zoning and planning, testified that in his opinion the highest and best use of the subject property would be a 30-unit apartment building. He proposed that the property be rezoned to an "E" multiple-family district which would permit construction of apartment buildings having a lesser density of use than those in the "F" zone. He suggested that such a reclassification would provide a transitionary zone between the higher density of use existing in the buildings in the "F" zone to the south of plaintiffs' property and the single and two-family dwellings to the north. The witness admitted, however, on cross-examination, that in his opinion, since there were no multiple-family dwellings to the north of the property, any reclassification of the property to an "E" multiple-family district would have a detrimental effect upon the single and two-family dwellings in that area.

Harold Enright, a real estate appraiser and broker, also testified that in his opinion the highest and best use of plaintiffs' property would be the construction of apartment buildings. He stated that the Village of Oak Park had not yet approached the absorption point for apartments and that he felt both parcels were suitable for the construction of "F" multiple-apartment buildings. He

333

suggested, however, that the northern half of the property be reclassified for less dense "E" multiple dwellings so as to act as a buffer area between the lesser and higher densities of the "D" and "F" zones to the north and south respectively. He further testified that the two-family dwelling immediately adjacent to the north of the subject property and the dwellings to the west would be adversely affected by his proposed reclassification. Beyond that he could see no further damage to property values. Mr. Enright appraised the present value of Parcel 1 at $24,000, and Parcel 2 at $45,825, but stated that if the property were reclassified and improved as proposed by plaintiffs, Parcel 1 would then be worth $48,000 and Parcel 2, $91,000.

Fred Allen, another of plaintiffs' witnesses, appraised the property at a somewhat higher value. In his opinion, the property would be worth about $150,000 when reclassified for multiple-family use. At any rate, defendant concedes in its brief that there will be an increase in value to plaintiffs' property if it is rezoned for any multiple-family use.

Defendant, contrary to the evidence presented by plaintiffs, offered the testimony of several experts as proof that the highest and best use of the property would be the construction of single or two-family dwellings in accordance with the present zoning classifications.

Richard Massell, Director of Building and Zoning for the Village of Oak Park, testified that the highest and best use of plaintiffs' property was for two-family dwellings. He based his opinion on the fact that there were no multiple dwellings—other than two-family dwellings—in the immediate vicinity to the north, east and west of the subject property; that any reclassification for multiple-family use would therefore be inconsistent with the existing character of the neighborhood; and finally, that there was not even an alley separating the back of plaintiffs' property from the back of the single-family homes

334

abutting it on the west. (Note: in fact, the homes abutting plaintiffs' property on the west are two-family dwellings.) In addition, Mr. Massell testified that at present there are areas in Oak Park which are zoned for multiple-family dwellings which have not yet been developed.

Carl Gardner, employed as a zoning consultant, testified that the subject property was presently zoned for its highest and best use, and based his opinion on the following criteria:

1) The area to the north of plaintiffs' property is developed with attractive and well-maintained single and two-family dwellings;

2) Any reclassification for multiple-dwelling use would constitute an intrusion into this residential area and would have a disruptive and detrimental effect on it; and

3) To grant a reclassification would destroy the basic tenets of the planning and zoning efforts of the Village because there are numerous instances where "F" multiple districts adjoin "A," "B," "C" or "D" single and two-family areas.

Over 27 surrounding property owners testified or filed affidavits by stipulation of counsel that they have made substantial investments in both the purchase of their properties and in subsequent improvements in reliance upon the then existing zoning classifications. These single and two-family homeowners are unanimously opposed to any change in the present zoning classifications. No property owners, other than the plaintiffs, testified in favor of changing the zoning so that the property may be used for multiple-family dwellings.

Mr. Stevenson, a real estate broker and appraiser, testified that five houses on Grove Avenue which backed up to the west side of the subject property, and the property adjoining on the north would suffer a ten percent loss in value, and that these homes were valued at between $20,-000 and $30,000. He further indicated that there would be

335

a tendency for the whole neighborhood to the north to deteriorate, as those owning older homes would tend to let them run down, assuming that the area would all eventually be zoned for mutiple-family use.

At the close of the evidence the master in chancery found that the property directly to the west would be adversely affected by the proposed use requested by plaintiffs; that the property to the north would be adversely affected by the proposed use; and especially the adjoining property to the north and northwest; and that the property to the east would be adversely affected to a minor degree. Subsequently, however, the master sustained in part certain objections to his original report to the effect that if the subject property were developed and utilized as proposed, the effect on the neighboring properties would be minimal or nonexistent. Notwithstanding, he still concluded that the Zoning Ordinance of the Village of Oak Park, in its application to plaintiffs' property, is not unreasonable or arbitrary, nor does it unduly restrict the use of that property, but rather bears a reasonable relationship to the protection of the public health and welfare, and was a valid exercise of the police power granted to the Village of Oak Park.

The trial court, after fully considering the record of the evidence presented before the master in chancery, overruled his recommendations and found that "the limitations placed upon plaintiffs' real estate, as aforesaid, by the existing zoning ordinance of the defendant, Village of Oak Park, bears no reasonable relation to the public health, safety, comfort, morals and general welfare, and the enforcement thereof unreasonably limits plaintiffs' use of said property, as proposed, without correspondingly benefiting the public and said limitations are therefore, as applied to plaintiffs' property, . . . violative of the provisions of the Constitutions of the United States and State of Illinois." The court then entered an order declaring that the plaintiffs be allowed to improve their

property with a 3-story building containing no more than 30 dwelling units, but limited the plaintiffs' right to improve their real estate as aforesaid. From the order the defendant has taken the instant appeal.

 In this court the defendant proceeds on the theory that the plaintiffs failed to overcome the presumption of the validity of the Oak Park Zoning Ordinance as applied to their property, and that the court should have sustained the master's report to this effect. It must be emphasized at the outset that this court is not a zoning commission. Section 11–13–1, chapter 24 of Illinois Revised Statutes (1965), authorizes municipalities to formulate comprehensive zoning and use plans for their corporate areas. Zoning ordinances are based upon the police power of the State to enact laws for the safety, health, morals and general welfare of the people. A municipality cannot, however, in exercising its legislative discretion arbitrarily deprive a citizen of his property under the guise of protecting the public interest. The owners of real property have the constitutional right to use their property in any manner they desire, providing that such use does not interfere with the welfare of the people generally. A municipality is not the final arbiter of what constitutes the best use of particular property within the corporate area. Its decision is subject to review by the courts. If on review the zoning ordinance is found to be without substantial relation to the public health and welfare it must be declared void as violative of the Constitutions of the United States and of the State of Illinois. Kennedy v. City of Evanston, 348 Ill 426, 181 NE 312.

 However, in the recent case of Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96, the Supreme Court said at page 273:

"A presumption exists in favor of the validity of a zoning ordinance and the one who attacks such ordinance has the burden of overcoming the presump-

337

tion by proving with *clear and convincing evidence* that, as applied to him, it is *arbitrary and unreasonable* and is without substantial relation to the public health, morals, safety and welfare. [Citing cases.]" [Emphasis supplied.]

See also LaSalle Nat. Bank v. Village of Palatine, 92 Ill App2d 327, 236 NE2d 1.

■■ As this court pointed out in Jans v. City of Evanston, 52 Ill App2d 61, at page 68, 201 NE2d 663:

". . . a party challenging the validity of a zoning ordinance has the burden of showing by evidence that is clear and convincing that the city has abused its legislative discretion in classifying property in a certain manner. Such proof must establish not merely that the property *could* reasonably be classified otherwise, nor indeed that the court *would* classify it otherwise; rather, it must show that the legislative decision as to the property is 'clearly unreasonable' (Exchange Nat. Bank of Chicago v. Cook County, 25 Ill2d 434, 441, 185 NE2d 250) and a 'clear abuse of discretion' (Trendel v. County of Cook, 27 Ill2d 155, 161, 188 NE2d 668)."

In other words, if the best that can be said for plaintiffs' evidence is that it raises a reasonable difference of opinion as to whether the ordinance bears a substantial relation to the public health and welfare, under such circumstances the judgment of the municipal zoning authorities must prevail. LaSalle Nat. Bank v. City of Palatine, 92 Ill App2d 327, 236 NE2d 1; Gedmin v. City of Chicago, 88 Ill App2d 294, 232 NE2d 573; Chicago & N. W. Ry. Co. v. City of Des Plaines, 97 Ill App2d 201, 240 NE2d 280.

■ Among the factors to be considered in determining whether a zoning ordinance is unreasonable and arbitrary and without substantial relation to the public

health, safety, morals and welfare are: the character of the neighborhood, the use and zoning of nearby property, the suitability of the property for the zoned purpose, the public gain as compared with the hardship, if any, imposed on the property owner; the effect of the present zoning on the value of the property, and the effect of the proposed zoning on the surrounding property. Chicago & N. W. Ry. Co. v. City of Des Plaines, supra.

█ █ We find that there is no need to reiterate the evidence presented in detail in this opinion. Suffice it to say that it contained substantial conflicts, although all the witnesses agreed that any reclassification for multiple occupancy would have at least some degree of detriment to the surrounding residential properties. Certainly, the testimony in this case falls short of showing by clear and convincing evidence that the judgment of the Village of Oak Park zoning authorities was arbitrary and unreasonable when they decided that the highest and best use of the subject property was for single and two-family dwellings. At best, all that plaintiffs accomplished was to raise a reasonable difference of opinion as to whether the ordinance bore a substantial relationship to the public welfare, which, as stated previously, is not sufficient to overcome the presumption of its validity. The mere fact that the property might be worth more to the plaintiffs if developed for multiple occupancy causes a situation which occurs in nearly every case of a zoning restriction and does not afford a reason for a court to substitute its judgment for that of the zoning authorities. Jans v. City of Evanston, supra.

While plaintiffs are not precluded from attacking the validity of the zoning ordinance as it applies to their property, there are a number of factors which strongly militate against granting them the relief they pray for. In the first place, plaintiffs purchased their property at a price commensurate with its existing zoning, and now seek—according to their own evaluations—to double

their investment, to the detriment of the surrounding property owners, without first having demonstrated why they would be unable to recoup their investment from the development of the property in a manner consistent with the present zoning requirements.

Secondly, plaintiffs purchased Parcel 1 of the subject real estate with full knowledge of its two-family zoning classification. Although there is conflicting evidence presented as to whether Parcel 2 was purchased with actual knowledge of the existing zoning restrictions, we are faced with the inescapable fact that plaintiffs did acquire title to the property subsequent to the enactment of the zoning ordinance in question, and hence with record notice of the restrictions thereby imposed. Weber v. Village of Skokie, 92 Ill App2d 355, 235 NE2d 406.

 Moreover, it is difficult for this court to believe that a building contractor with over 42 years of experience would purchase property without first carefully inquiring as to its zoning. Although one may purchase property in the face of a preexisting classification and still attack the validity of the zoning ordinance in an attempt to reap the benefits of its removal, certainly such a person does not occupy a favorable position. Any financial disadvantage that may result to the plaintiffs from a denial of their complaint is a self-created one. Chicago Title & Trust Co. v. Village of Wilmette, 27 Ill 2d 116, 188 NE2d 33; LaSalle Nat. Bank v. Western Springs, 30 Ill2d 340, 196 NE2d 680; Weber v. Village of Skokie, supra. As the Supreme Court pointed out in American Nat. Bank & Trust Co. of Chicago v. Chicago, 30 Ill2d 251, 254, 195 NE2d 627:

> ". . . Valenti, is a building contractor and realtor of more than 20 years experience, who has built and sold many homes in this area. He purchased the four lots, secured the vacation of the alley, purchased the alley portion and joined the five parcels into an

340

odd-shaped tract, all with full knowledge of the single-family zoning classification. While a purchaser is not precluded from challenging a preexisting zoning classification, his purchase in the face of the zoning restrictions, is a factor to be considered. (Vedovell v. City of Northlake, 22 Ill2d 611.) As we have said where a purchase was made with full knowledge of the existing residential classification, '. . . (I)t is not unreasonable to suppose that the price paid was commensurate with that purpose. Under these circumstances, it can hardly be found that the ordinance has diminished the value of plaintiff's property or is confiscatory.' Elmhurst Nat. Bank v. City of Chicago, 22 Ill2d 396, 402–403.

"Under the circumstances here prevailing, the hardship, if any, upon plaintiff by virtue of the zoning classification does not justify a holding that the zoning ordinance is unreasonable, invalid and unconstitutional as applied to plaintiff's property; and the decree of the circuit court of Cook County so holding is reversed."

The very nature of zoning and planning requires that neighborhoods of varying degrees of density adjoin each other, but that, in and of itself, affords no justification for the constant erosion of zoning boundaries. It is axiomatic that zoning lines must begin and end somewhere.

 This court is not unmindful of the rule that the judgment of the trial court will not be disturbed unless it is contrary to the manifest weight of the evidence. However, we reassert the position taken by the Supreme Court in Standard State Bank v. Village of Oak Lawn, 29 Ill2d 465, 194 NE2d 201, where the court said at page 471:

"Plaintiff urges that the findings of the trial court cannot be disturbed unless contrary to the manifest weight of the evidence. We agree that this is the

341

rule. It is, however, clear to us that the evidence, when viewed most favorably to plaintiff, falls far short of overcoming the presumptive validity of the ordinance. At best, it accommodates a legitimate difference of opinion as to the reasonableness of the ordinance, and, under such circumstances, the legislative judgment must prevail."

The judgment of the Circuit Court is reversed.

Reversed.

DRUCKER and ENGLISH, JJ., concur.