CITIZENS BANK AND TRUST COMPANY OF PARK RIDGE, as Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF PARK RIDGE, Defendant-Appellant.

(No. 54647;

First District—April 18, 1972.

Albert A. Klest, of Park Ridge, for appellant.

Robert J. DiLeonardi, of Des Plaines, for appellees.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

The plaintiffs are contract purchasers of land within the limits of the City of Park Ridge. They petitioned for a zoning variation that would permit the building of single-family residences on lots 35 feet in width and 4550 square feet in area instead of the zoning requirements of 50 feet in width and 6500 square feet in area. The petition was denied and the petitioner then requested permits to build single-family residences on lots 42 feet in width and 5460 square feet in area. This was also denied and plaintiffs then filed this suit for a judgment declaring that as

a matter of law, section 252.8 of the Zoning Ordinance of the City does not apply or is void as to the subject property insofar as it prohibits the plaintiffs from building five homes on 42-foot sites as above stated, and for an injunction ordering the issuance of the building permits therefor. The City contends that the ordinance is valid and applicable to the property in question. At the close of the hearing the court entered a decree holding that the zoning ordinance, especially section 252.8, is invalid and unconstitutional as applied to the subject property. The facts follow.

In 1924, the subject property was divided into 35-foot lots and a plat of subdivision was recorded in the Office of the Recorder of Deeds of Cook County, encompassing the subject property and several blocks to the south and west of the subject property. In April 1928, the City of Park Ridge passed its zoning ordinance. On November 28, 1928, the subdivision in which the subject property is located was annexed to the City of Park Ridge. On November 30, 1928, the City amended its zoning ordinance to require a minimum of 50 feet of frontage and 6500 square feet per single-family residence. Subsequently this ordinance was amended to provide that an owner of property which did not contain the required frontage or lot area could use it for a residence if certain conditions were proved evidencing an inability to acquire additional property to comply with the ordinance.

Nearly all of the balance of the subdivision was developed in compliance with the ordinance, and much of the surrounding area was developed on lots which greatly exceed the requirements of the ordinance, notwithstanding that of the seventeen 35-foot lots of record in the block containing the subject property, seven were developed with residences because each was in single and separate ownership and the owner could not acquire additional property to comply with the minimum frontage and area requirements.

In the instant case, the City refused to issue permits to build on lots which were substandard in both area and frontage because the plaintiffs owned six contiguous 35-foot lots which could be combined into four building sites and thus fully comply with the zoning ordinance.

Plaintiff Kolton testified that he had signed a contract to purchase the subject property for $38,000 after seeing the other buildings on the block on 35-foot lots, but he did not check with the City as to the zoning restrictions until after he had signed the contract and made an earnest money deposit. The evidence reveals that he has been a builder in Park Ridge and other suburbs for fourteen years and has built approximately 25 homes in Park Ridge, all on 50-foot lots. The predominant width throughout the area is 50 feet or greater, according to the testimony of

a city planning and zoning consultant. The area is developed with well-maintained single-family homes. The property east of the subject property is located in the County, which requires a minimum lot area of 10,000 square feet per dwelling unit. The property west of Potter Road is the subject property in Park Ridge which requires 6500 square feet and 50 feet of frontage.

Experts on behalf of the City testified that the best use of the subject property is served by four building sites. This testimony was based on the overwhelming character of the surrounding area. Over 90 per cent of the 363 lots used for residential purposes are in excess of 50 feet in width and meet the minimum lot area requirements of 6500 square feet. If the land here involved were to be divided into five lots, as desired by plaintiffs, there would be five additional nonconforming uses which, it is contended, could change the character of the neighborhood.

The value of the subject property for five building sites on 42-foot lots would be $10,000 per site, or $50,000, while the value for four building sites would be $12,000 per site, or $48,000. These figures were based on the recent sale to the plaintiff at a price of $38,000. The City contends that the development as a single-family residential composite site divided into four sites would allow for the type of house apparently most in demand by the typical buyer in the Park Ridge area.

The City contends that plaintiff Kolton is not in a position to contest the validity of the zoning ordinance because he is an experienced builder who purchased at a price below market value when he could have made proper inquiry as to zoning regulations. The City further contends that the prior issuance of building permits on substandard lots does not estop it from enforcing the current zoning provision regulating density of use, and that plaintiff must comply with the zoning ordinance where there is sufficient land available in a contiguous tract to enable him to do so.

Plaintiffs argue that they have overcome the presumptive validity of the zoning ordinance and that under the facts and circumstances of this case there is no reasonable basis in public welfare to justify the application to the subject property of the 50-foot lot frontage and 6500 square feet lot area restrictions. Plaintiffs contend that they should be permitted to erect a single-family dwelling on each of five building sites of 42 feet in frontage and 5544 square feet in area, as proposed.

■■ When the land in question was annexed to the City of Park Ridge it immediately became subject to all the laws and ordinances of the City, including section 252.8 of the zoning ordinance which requires a minimum frontage and lot area. (*City of Highland Park v. Calder,* 269 Ill.App. 255; *People ex rel. Trebat v. City of Park Ridge,* 110 Ill.App.2d

404, 249 N.E.2d 681.) The fact that the property was subdivided into 35-foot lots prior to the annexation and prior to the passage of the zoning amendment requiring minimum frontage and area, does not give the plaintiffs the right to exceed the ordinance limitations, as the lots owned by plaintiffs are contiguous and can be readily accommodated to the zoning restrictions. Nor does the fact that a parcel of property has been divided into improved platted lots of a certain size preclude a municipality from exercising its zoning authority to restrict the area and frontage to a greater size. (*Weber v. Village of Skokie*, 92 Ill.App.2d 355, 235 N.E.2d 406.) The fact that the property was platted prior to the enactment of the zoning ordinance does not give the purchaser any right to develop what have since become substandard lots. There is no vested right in the continuation of a zoning ordinance. (*People ex rel. Gustafson v. Calumet City*, 101 Ill.App.2d 8, 241 N.E.2d 512.) The City has the right to amend its zoning ordinance and impose restrictions on density of use notwithstanding a former plat of subdivision. *Weber v. Village of Skokie, supra.*

The evidence reveals that plaintiff Kolton neither checked the plat book nor made inquiry of the City prior to his entering into the contract for the purchase of the subject property. He was an experienced builder who had on a number of occasions built within Park Ridge, and he admitted to being aware of the minimum width and area restrictions prior to entering into the contract of purchase. The price was agreed upon before any consultation was had with the zoning authorities. According to the testimony of an expert witness for plaintiff, the purchase price was between $4,000 and $7,000 less than what would be the fair market value of the property when used in compliance with the ordinance. We do not hold that a buyer who purchases without inquiry or knowledge of a zoning restriction is precluded from challenging its validity. *Vedovell v. City of Northlake*, 22 Ill.2d 611, 177 N.E.2d 124; *American Nat. Bk. & Tr. Co. v. City of Chicago*, 30 Ill.2d 251, 195 N.E.2d 627; *Avenue State Bank v. Village of Oak Park*, 99 Ill.App.2d 329, 241 N.E.2d 630.

The regulation of density of use through lot area restrictions is an authorized exercise of the zoning power of the City which has been specifically authorized by the legislature. The wide area in which municipalities have power with respect to zoning should be taken into consideration. The Cities and Villages Act [Ill. Stat. 1965, ch. 24, par. 11—13—1] states:

11—13—1. "Objectives—Classification, regulation and location of uses—Nonconforming uses.] To the end that adequate light, pure air, and safety from fire and other dangers may be secured, that the taxable value of land and buildings throughout the municipality may be con-

served, that congestion in the public streets may be lessened or avoided, that the hazards to persons and damage to property resulting from the accumulation or runoff of storm or flood waters may be lessened or avoided, and that the public health, safety, comfort, morals, and welfare may otherwise be promoted, the corporate authorities in each municipality have the following powers:

\*    \*    \*

(3) to regulate and limit the intensity of the use of lot areas, and to regulate and determine the area of open spaces, within and surrounding such buildings; \*  \*  \*."

■■ Section 2 of the Park Ridge Zoning Ordinance regulates the density of population by providing for the minimum width and area restrictions. An amendment to the ordinance provides in part as follows:

"In the 'A' Residence Districts every building with its accessory buildings hereafter erected or altered shall provide a lot area of not less than 6500 square feet with a frontage of not less than fifty feet. Excepted from these requirements are (a) any single lot of public record and separately owned from land adjoining on either side which cannot be reasonably widened (as determined by the Zoning Board of Appeals) so as to meet or reasonably exceed the minimum size required herein; and (b) lots of public record on the date of adoption of this ordinance which are less than 130 feet in depth, where a lot area of not less than 6150 square feet with a frontage of not less than fifty feet shall be provided."

Exceptions are also made for land which would otherwise be rendered useless because there is no land which is available to enable expansion. The provisions for exceptions in certain cases are the following:

(4) "Any other single lot which was of public record prior to April 3, 1928, provided that the Zoning Board of Appeals finds that all of the following requirements are complied with:

(a) The applicant shall furnish a survey by a registered land surveyor showing the lot upon which he proposes to erect or cause to be erected a single-family detached dwelling and also showing the lots on either side of said lot with all improvements thereon and widths of adjoining side yards and any projections of buildings or structures.

(b) The applicant shall also provide a sworn affidavit to the effect that neither he, the owner of record, contract purchaser, or the holder of any beneficial interest in such lot, has now, or has had during the last five years any right, title or interest either directly or indirectly, in all, or any part of the undeveloped properties lying contiguous to the lot in question.

(c) If the survey submitted by the applicant clearly shows no land

other than that required for proper setbacks to be physically available on either side of applicant's lot that could be added thereto to increase its width or area, the application shall be approved. If, however, the survey indicates land to be available in addition to minimum required sideyards on either side of the applicant's lot, after making every reasonable effort to acquire such additional land, the applicant shall be entitled to approval upon submitting a sworn affidavit setting forth in detail what steps he undertook to acquire such additional land needed to expand his lot, and shall support such affidavit with copies of letters of correspondence, sent by registered mail to the owner or owners of such contiguous properties constituting an offer, having a life of at least 30 days unless, rejected upon advice of an attorney, to purchase part or all of such property for its fair market value together with replies thereto, if any, and any other information the applicant may desire to submit.

(d) It is the intention of the above provisions to require the applicant to make every reasonable effort to acquire additional land in the interest of maintaining a reasonable standard of land use compatibility of the benefit of the general public."

This is a reasonable and proper exercise of the City's zoning powers. The plaintiffs have land available with which to comply with the ordinance, and there is no sound basis on which an exception should be made in their case.

Zoning regulations present a radical departure from the traditional concepts of private property in our time. Yet the need for regulation was and is great and has been described by the courts as arising from the "constantly increasing density of our urban populations * * * and the growing complexity of our civilization * * *." (*City of Aurora v. Burns,* 319 Ill. 84.) In that case the Supreme Court of Illinois considered that zoning was designed to prevent congestion and, among other things, "secure quiet residence districts."

■■ The law is well settled in Illinois that the presumption favoring the validity of zoning ordinances places the burden of proof on the plaintiff to show that the restriction is unreasonable, arbitrary, capricious or confiscatory as to his property. *Jans v. City of Evanston,* 52 Ill.App.2d 61, 201 N.E.2d 663; *Bright v. City of Evanston,* 57 Ill.App.2d 414, 206 N.E.2d 765; *Kioutas v. Chicago,* 59 Ill.App.2d 441, 208 N.E.2d 587; *Gedmin v. City of Chicago,* 88 Ill.App.2d 294, 232 N.E.2d 573; *Avenue State Bank v. Village of Oak Park,* 99 Ill.App.2d 329, 241 N.E.2d 630.

■■ The zoning restriction of which the plaintiff, Kolton, complains was enacted in 1928, 38 years prior to the time he contracted to purchase the property. He states that he purchased the property without checking

the Village zoning regulations. When the purchase price is compared to the present market value of the land according to its use in compliance with the zoning regulation it cannot be said that the ordinance as applied to this property is confiscatory, nor does it deprive plaintiffs of property without due process of law.

The judgment of the Circuit Court is reversed.

Judgment reversed.

STAMOS, P. J., and LEIGHTON, J., concur.