IRVING KLEHR *et al.*, Plaintiffs-Appellants, *v.* ZONING BOARD OF APPEALS OF THE VILLAGE OF SKOKIE, Defendant-Appellee.

(No. 59286; 

First District (1st Division)—November 18, 1974.

Moltz & Wexler, of Chicago (Leon C. Wexler, of counsel), for appellants.

Harvey Schwartz, of Skokie (Gilbert Gordon, of counsel), for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

Irving and Alice Klehr filed a complaint in the circuit court of Cook County for administrative review of a determination by the Zoning Board of Appeals of the Village of Skokie denying a variation to allow construction of a single-family residence on plaintiffs' lot which has a 35-foot frontage in an area wherein the required frontage is 40 feet. The court found that the Board's decision to deny a variation was not arbitrary, unreasonable or capricious and did not violate the constitutional rights of the plaintiffs. The court further held that the relevant portions of the Skokie ordinance which prohibited the plaintiffs from erecting a dwelling unit on a lot with a 35-foot frontage were not unconstitutional.

The lot (recorded as Lot 214), located at 8306 North Karlov Avenue in Skokie, has a frontage of 35 feet on Karlov Avenue and a depth of 124 feet to a public alley on the west. Lot 214 is approximately 4346 feet square, which is less than the 4800-square-foot requirement of the Skokie zoning ordinance. Lot 214 is adjoined to the north by a lot (containing a residence) with a 55-foot frontage (recorded as Lot 215), and to the south by a lot (containing a residence) with a 45-foot frontage. The south lot is on the northwest corner of Karlov Avenue and Madison Street.

In 1953, plaintiffs purchased Lots 214 and 215 as one parcel from Mr. and Mrs. Ralph Scheffield. The record indicates that the plaintiffs and their predecessors in title held the two recorded lots in common ownership and used the entire parcel as a single family residence. Shrubbery borders Lot 214 on the north and east sides, while a garage built by the Scheffields is located on the western portion of the lot. Both the Klehrs and the Scheffields used the garage for their automobiles and for

storage and maintained the property by attending to the lawn and shrubbery.

In 1968, the plaintiffs sold their home located on Lot 215, separate and apart from Lot 214, to Mr. and Mrs. Henry Camnitzer. The record indicates that the Mitchell Real Estate Company, on behalf of the plaintiffs, listed the home and the adjoining lot separately. Mr. Camnitzer was given a first right of refusal on Lot 214, but declined to purchase the property at the offered price of $12,000. The Kulwin Construction Company then agreed to purchase Lot 214 on the condition that a variance be obtained from the Skokie Zoning Board of Appeals. Plaintiffs proceeded to petition the Board for permission to build a single-family dwelling unit on their undersized lot.

At the outset of the testimony before the Board, plaintiffs contended that the matter was before the Board as a request to reinstate a previous variance granted to the property in September of 1965. The 1965 variance provided that a house was to be moved to Lot 214 from a parcel which consisted of three recorded lots located in the immediate vicinity. The 1965 plan contemplated two homes on a total of four recorded lots. However, the transactions necessary to accomplish the plan were not executed and, pursuant to the Skokie zoning ordinance, the variance died after a lapse of 18 months. The Board's position was that plaintiffs' request for a variance in 1972 was an entirely new case, differing from the circumstances which prompted the Board to grant a variance in 1965.

Testimony was heard by the Board from witnesses on both sides of the issue. Mr. Jack Bieder, a man with 10 years' experience in the real estate business and part owner of the Kulwin Construction Company, testified for the plaintiffs. He stated that the highest and best use of the subject parcel was a single-family residence. Evidence was given that at least two other similarly narrow lots in the neighborhood contained single-family residences. It was Mr. Bieder's opinion that the value of Lot 214 was $12,000 if it could be used for a single-family dwelling; otherwise, it was valueless.

Neighborhood opposition to the variance was voiced by several witnesses. Ninety signatures were submitted to the Board in a petition which opposed the variance on grounds that it would tend to congest the area and set a precedent for other similarly narrow lots in the area held in common ownership.

Mr. Henry Camnitzer, the present owner of the Klehr home, testified to the circumstances and events which led to his purchase of the property recorded as Lot 215. Although he declined to purchase the adjoining Lot 214 at the price of $12,000, Camnitzer stated that he was still interested in purchasing the lot at a different price. Through an agree-

ment with the Klehrs, Mr. Camnitzer maintains Lot 214, attending to the lawn and shrubbery.

After all the testimony was heard, the Board denied the plaintiffs' petition for a variance. The Board found that the plight of the plaintiffs was not unique and that their hardship was created by their own doing. The Board further found that a denial was warranted by provisions of the 1946 Skokie zoning ordinance which state that undersized lots of record held in common ownership after 1946 would not be the subject of variation. It is from these findings of the Board, which the circuit court affirmed, that plaintiffs prosecute this appeal. .

Plaintiffs' claim is not supported by the prevailing applicable law. The facts in *Weber v. Village of Skokie*, 92 Ill.App.2d 355, 235 N.E.2d 406 closely resemble those in the instant case. The plaintiffs in *Weber* purchased a conforming parcel of land containing three lots of record in 1951. In 1964, the Webers conveyed two of those lots and retained the third. The remaining lot was substandard to the minimum lot size requirements provided by the Skokie zoning ordinance. When the Webers petitioned the Skokie Zoning Board of Appeals for a variance, the Board denied their petition. On appeal, this court upheld the Board's decision.

■■ We held in *Weber* that a purchaser does not have an irrevocable right by virtue of a plat's recordation pursuant to the Plat Act (Ill. Rev. Stat. 1973, ch. 109, par. 1 *et seq.*) to evade the applicable zoning law by establishing a nonconforming use out of the subject lot. "The fact that the property was platted prior to the enactment of the zoning ordinance does not give the purchaser any right to develop what have since become substandard lots." *Citizens Bank & Trust Co. v. City of Park Ridge*, 5 Ill.App.3d 77, 81, 282 N.E.2d 751; see *Ganley v. City of Chicago*, 18 Ill.App.3d 248, 309 N.E.2d 653.

Because the plaintiffs in the *Weber* case had used the three lots as one parcel for 13 years, we found no indication that reliance was placed on plat recordations. Since the Webers purchased the entire three-lot parcel in 1951, we found that they knew of the lot size requirements provided by the same 1946 zoning ordinance discussed in the instant case. Any financial disadvantage resulting to the Webers was due to their failure to convey all three lots as one parcel.

Similarly, the plaintiffs in the case at bar purchased Lots 214 and 215 in 1953, 7 years subsequent to the enactment of the Skokie zoning ordinance. The very fact that Lot 214 was granted a variance in 1965 as part of an overall plan indicates plaintiffs' knowledge of the substandard dimensions of their lot. It appears that for 15 years Lot 214 was used as a side yard for the adjoining Lot 215 whereon the family residence was located. The Klehrs utilized a garage located on Lot 214

for their automobile and the yard for recreational purposes. Thus, the circumstances attendant to the plaintiffs' ownership of the two lots do not indicate reliance upon plat recordations. With knowledge of the zoning restrictions, the Klehrs retained their undersized side lot at their own risk. As in the *Weber* case, we are inclined to believe that any financial disadvantage which might accrue to the plaintiffs is self-imposed.

Any applicant seeking a variation from an authorized zoning board of appeals has a burden of proving three prerequisites. The Illinois statute provides:

> "In its consideration of the standards of practical difficulties or particular hardship, the board of appeals shall require evidence that (1) the property in question cannot yield a reasonable return if permitted to be used only under the conditions allowed by the regulations in that zone; and (2) the plight of the owner is due to unique circumstances; and (3) the variation, if granted, will not alter the essential character of the locality. A variation shall be permitted only if the evidence, in the judgment of the board of appeals, sustains each of the 3 conditions enumerated." Ill. Rev. Stat. 1973, ch. 24, par. 11—13—4.

■■ The record is insufficient to satisfy the burden placed upon the plaintiffs. "A 'particular hardship' does not mean one that is self-imposed, or that a piece of property is better adapted for a forbidden use than for the one which is permitted, or that a variation would be to the owner's profit or advantage or convenience." (*River Forest State Bank & Trust Co. v. Zoning Board of Appeals*, 34 Ill.App.2d 412, 419, 181 N.E. 2d 1.) If plaintiffs are unable to realize a reasonable return for the lot, it is not due to the burdensome effect of the zoning ordinance; it is due to their failure to convey both lots as one parcel. Lot 214 is not totally valueless. Testimony was given by Mr. Camnitzer, an adjoining landowner, that he would be willing to purchase the lot at a price less than the current offer. Nor do we find it tenable that plaintiffs expected a variance in 1972 because of a variance granted to Lot 214 in 1965. Vastly different circumstances surrounded each instance and plaintiffs' reliance, if any, could not be said to be justified. The Board's finding, therefore, that the plaintiffs' plight is not unique shall remain undisturbed. *Asbach v. Zoning Board of Appeals*, 133 Ill.App.2d 22, 270 N.E.2d 535; *Szeliga v. City of Des Plaines*, 4 Ill.App.3d 257, 280 N.E.2d 767.

■■ Absent proof that plaintiffs have suffered special damage from an application of the 1946 Skokie zoning ordinance, the provisions for minimum lot size cannot be found to be confiscatory or deprive plaintiffs of their property without due process of law. (*Jacobson v. City of*

*Evanston,* 10 Ill.2d 61, 139 N.E.2d 205.) Even though plaintiffs' property might be worth more as a single-family residence, this fact alone does not invalidate the zoning ordinance, nor make its application to plaintiffs' property an "unfair taking." Minimum lot area requirements may validly restrict a more valuable use of property even if the subject lot is owned or has been owned in common with a contiguous lot. Minimum lot area restrictions will only be declared invalid if arbitrary or a clear abuse of power is shown. Plaintiffs have not sustained the burden of overcoming the presumption of the validity of the ordinance. *Galpin v. Village of River Forest,* 26 Ill.2d 515, 187 N.E.2d 233; *Reitman v. Village of River Forest,* 9 Ill.2d 448, 137 N.E.2d 801; *Citizens Bank & Trust Co. v. City of Park Ridge,* 5 Ill.App.3d 77, 282 N.E.2d 751.

Plaintiffs further contend that portions of Skokie's zoning ordinance which provide that buildable lots of record effective in 1946 may be subject to variance except for lots held in common ownership with a contiguous lot violate their equal protection rights as guaranteed by the state and federal constitutions. Plaintiffs argue that because the ordinance is based upon ownership of contiguous lots rather than usuage of contiguous lots, it is therefore defective. The relevant portions of the ordinance provide:

> "5 b. The Board of Appeals shall order the Director of Building to issue a permit for erecting a building for any permitted residential use in the district on the subject lot upon compliance with all of the foregoing provisions and all other applicable provisions of this ordinance, with each required side yard reduced to not less than ten percent of the width of the lot, if all of the following requirements are met:
>
> (1) The subject lot:
>> (a) is not adjoining and contiguous to a vacant lot on either side held under common ownership at any time after the year 1946; or
>> (b) is not contiguous to an improved lot of record which has one foot or more of an adjoining side yard in excess of the minimum required side yard for the district in which the building or structure is located, which additional side yard land could physically be added to the applicant's lot to increase its width or area; or that the owners of the adjoining lots refuse to sell any portion of land that could be added to the applicant's lot to increase the width thereof without reducing the required side yards of the adjoining lots and

which additional land the applicant would be willing to purchase; and

(c) is not owned and has not been owned directly or indirectly or by a nominee of any person, firm, corporation or trust, or by an officer, shareholder, director, partner, beneficiary, agent or person related by blood or marriage or by any predecessors in title who also held or holds any right, title or interest in or to either one or both of the contiguous lots after the year 1946 to the date of application for a building permit.

(2) The contiguous lots are not owned and have not been owned directly or indirectly or by a nominee of any person, firm, corporation or trust, or by any officer, shareholder, director, partner, beneficiary, agent or person related by blood or marriage or by any predecessors in title, who also held or holds any right, title or interest, directly or indirectly, in the applicant's lot after the year 1946 to the date of application for a building permit."

Amended Zoning Ordinance of the Village of Skokie, 1965, Article XIII, Section C, subsection 5b.

■■■ Plaintiffs' claim is without merit. In order to overcome the presumption in favor of the validity of a zoning ordinance, it must be proven with clear and convincing evidence that, as applied to plaintiffs, the ordinance is arbitrary or discriminatory and bears no substantial relation to the public health, morals, safety and welfare. (*Bennett v. City of Chicago*, 24 Ill.2d 270, 181 N.E.2d 96.) It is not enough to show that the property can be utilized at a greater profit. (*Reitman v. Village of River Forest*, 9 Ill.2d 448, 137 N.E.2d 801.) "Where a legitimate dispute may exist as to the desirability of the classification imposed, it is clear that the courts should not intervene to substitute their judgment for that of the duly constituted legislative body." (*Exchange National Bank v. County of Cook*, 25 Ill.2d 434, 185 N.E.2d 250.) Whenever it appears that the public welfare is promoted by a legitimate exercise of a municipality's police power, the restrictive zoning ordinance in question will stand regardless of the fact that individuals may suffer an invasion of their liberty of action and ownership over property. (*Forbes v. Hubbard*, 348 Ill. 166, 180 N.E. 767.) Plaintiffs have not met their burden of proof. They have not demonstrated how the ordinance creates an invidious classification or abridges a constitutionally guaranteed fundamental right. Cases in this jurisdiction, as well as in other juris-

dictions, have upheld ordinance provisions similar to those here in question. *Mitchell v. Zoning Board of Appeals*, 125 Ill.App.2d 1, 260 N.E.2d 454; *Citizens Bank & Trust Co. v. City of Park Ridge*, 5 Ill.App.3d 77, 282 N.E.2d 751; *Ganley v. City of Chicago*, 18 Ill.App.3d 248, 309 N.E. 2d 653; *Clemons v. City of Los Angeles* (1950), 36 Cal. 2d 95, 222 P.2d 439; *Howland v. Acting Superintendent of Buildings* (1951), 328 Mass. 155, 102 N.E.2d 423.

Plaintiffs cite *Ziman v. Village of Glencoe*, 1 Ill.App.3d 912, 275 N.E. 2d 168, in support of their general position. The *Ziman* decision involves an ordinance regulating side-yard requirements and has little bearing to the facts in the instant case. The *Ziman* case cites with approval our holding in *Weber v. Village of Skokie*, 92 Ill.App.2d 355, 235 N.E.2d 406.

■■ We conclude that the Board's denial of plaintiffs' petition for a variance was not arbitrary or discriminatory. The relevant portions of the Skokie zoning ordinance do not operate as a confiscatory taking nor as a denial of plaintiffs' equal protection rights under the law. The Village Board's decision was a legitimate exercise of the police power in promoting a well balanced neighborhood consistent with the requirements of its zoning ordinance. Therefore the judgment is affirmed.

Judgment affirmed.

GOLDBERG and HALLETT, JJ., concur.