(No. 37367.—

EXCHANGE NATIONAL BANK OF CHICAGO, Trustee, *et al.,* Appellees, *vs.* THE CITY OF CHICAGO.—(PARK MANOR NEIGHBORS, INC., *et al.,* Intervenors, Appellants.)

*Opinion filed May 27, 1963.—Rehearing denied September 26, 1963.*

ELLIS E. REID and ZEDRICK T. BRADEN, JR., both of Chicago, for appellants.

MAURICE J. NATHANSON and THEODORE W. HUSZAGH, both of Chicago, for appellees.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

This is an appeal by intervenors, Park Manor Neighbors, Inc., and Ashby Smith, from a declaratory judgment entered by the circuit court of Cook County holding the zoning ordinance of the city of Chicago void as applied to certain property of the plaintiffs, Exchange National Bank of Chicago, as trustee, and Walter and Lucille Clark. This case is before us on direct appeal by virtue of the trial judge's certification that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court.

Plaintiffs own a lot commonly known as 359 East 69th Street, Chicago, which has a frontage of 25 feet on 69th Street and a depth of 121.37 feet, or approximately 3,034 square feet. Originally and prior to the enactment of a Chicago zoning ordinance, two buildings were constructed on the lot. At the front was a store building with a five-room apartment on the second floor, and at the rear was a garage with a three-room coach house apartment above. Thereafter the two buildings were connected by a single-story brick building. The building then occupied substantially all of the lot area. Plaintiffs bought the real estate in 1960 subsequent to the enactment of the present Chicago zoning ordinance. The apartment above the store was occupied by a family of five; the coach house was occupied by a family of two; and the connecting portion was

used for storage. The plaintiffs proposed to construct a brick second-story over the connecting section, intending to convert the structure to a rooming house, with an expected occupancy of 24 persons.

The Chicago zoning ordinance of 1957 regulates the intensity of use of property by requiring maximum floor area ratios, minimum lot areas, and residential rear yards for certain uses. The subject property is zoned B4-1, and the prior nonconforming use made of the property exceeded the maximum floor area ratio, provided less than the minimum lot area, and failed to provide the minimum residential back yard area required for such a use in this district. (Municipal Code of Chicago, chap. 194A, secs. 8.5—4, 8.6—4, 8.7—4.) Section 6.4—2 of the ordinance prohibits structural alterations or additions to nonconforming structures, but section 6.4—1 permits necessary repairs to nonconforming structures.

A contractor, acting on behalf of the plaintiffs, applied for and received a sundry permit from the city of Chicago, which permitted necessary repairs only. A building inspector who visited the premises observed that work was in progress which exceeded the authority of the permit, and issued stop orders, and later the sundry permit was revoked. Thereafter plaintiffs engaged an architect to draw plans for the enlarged use, which were presented to the department of buildings with an application for a permit. The application was denied because the intended use of the premises constituted an alteration or addition to a nonconforming structure in violation of the said intensity-of-land-use provisions of the Chicago zoning ordinance.

Plaintiffs then instituted this action seeking a declaratory judgment that the foregoing intensity-of-use provisions of the zoning ordinance of the city of Chicago are null and void as applied to their property. Park Manor Neighbors, Inc., a community organization, and Ashby Smith were granted leave to intervene as interested parties.

Intervenors filed an answer, and a counterclaim which, upon motion of plaintiffs, was stricken.

The cause was referred to a master in chancery who heard testimony and found that the application of the ordinance was void and that the regulation of the intensity of land use does not in this case promote the public health, morals, safety and welfare. The trial court entered judgment on the findings in favor of the plaintiffs.

It appears from the record that the actual lot area is approximately 3,034 square feet, and therefore the total floor area permitted under the present ordinance is 3,637 square feet. As a nonconforming use the building had a floor area of 4,908 square feet which the proposed remodeling would increase to 5,708.

Based upon the prior use of the buildings with two dwelling units, the ordinance would require a lot area of 5,000 square feet. The intended use, contemplating 12 lodging rooms, would require a lot area of 15,000 square feet or 1,250 square feet per room. Both the prior and intended use would violate the residential rear yard area requirements.

Both defendant's and plaintiffs' real-estate experts testified before the master that the value of the real estate without remodeling was $22,000. Defendant's expert estimated the value after the proposed additions at $30,000, while plaintiffs' expert thought the value would be $40,000. Defendant's expert testified that the increased use would depreciate neighboring values from 10 to 15 per cent.

The intervenors-appellants contend that neither the findings of the trial court nor the evidence support a judgment that the zoning ordinance is void as applied to plaintiffs' property. Plaintiffs, however, insist the evidence clearly shows that the intensity-of-use provisions of the zoning ordinance, insofar as they prevent the proposed remodeling, bear no reasonable relation to the public health, safety, morals, or welfare.

Neither the facts nor the law in the present case are in substantial dispute. We have upheld the general principle of a limitation on the intensity of use as embodied in the Chicago zoning ordinance of 1957. (*Cosmopolitan National Bank* v. *City of Chicago,* 22 Ill.2d 367.) We must, therefore, presume that the general legislative purpose of such requirements is valid, and bears a reasonable relation to the public health, safety and welfare.

It is agreed that the value of the property without remodeling is $22,000. The cost of the remodeling as alleged by plaintiffs is in excess of $7,000. Evidence of the potential value of the property after remodeling varies between $30,000 and $40,000. There is no evidence in the record to establish the price plaintiffs paid for the real estate in 1960. Therefore, if the ordinance were enforced, the plaintiffs would be deprived of value of between less than $1,000 and less than $11,000, depending on which real-estate opinion is adopted. And since plaintiffs purchased the property subsequent to the Chicago zoning ordinance of 1957, we cannot presume that their cost was in excess of the value of the premises as affected by that ordinance.

Plaintiffs strenuously argue that the prior piece-meal use of the property so exhausted the land area that further modernization and development could not affect the general welfare. With this we cannot agree. It is conceded that the prior nonconforming use violated all the intensity-of-use restrictions of the ordinance. To the extent that they exceeded these restrictions prior to the enactment, they are permissible as a nonconforming use. However, the proposed addition increases the noncompliance with the maximum-floor-ratio provisions from 1,271 square feet to 2,071 square feet, or an increase in excess of 40%. The legislative criteria relating to minimum lot area was exceeded by less than 2,000 square feet by the nonconforming use. The proposed use would exceed such limitation by approxi-

mately 12,000 square feet, or an increased noncompliance of 600%.

It is, therefore, apparent that the proposed addition greatly increases the intensity of use of the premises and would create a substantially greater deviation from the standards adopted by the Chicago zoning ordinance.

We can find no evidence in this record to rebut the presumption that this limitation of use bears a reasonable relation to the public health, safety and welfare as applied to this property. Nor does this record show a substantial hardship to the property owner. The property was purchased subsequent to the enactment of the present zoning ordinance, presumably at a price commensurate with its market value as affected by the ordinance.

We do not doubt that the proposed intensification of the land use would yield a greater return, but this would be almost invariably true in any case where the intensity of use was increased. Yet the increased use also has a necessary effect on the crowded condition of the area. The municipal authorities have determined the propriety of certain restrictions on the intensity of land use. The burden is upon plaintiffs to show, by clear and convincing evidence, that the application of these norms is arbitrary and capricious as applied to the further deviation from the legislative norms by the proposed use. It is our opinion that plaintiffs have failed to sustain this burden. We cannot say on this record that the approved method of zoning regulation adopted by the city of Chicago does not bear a reasonable relation to the public health, safety and welfare. The cases cited by plaintiffs are in accord with the general principles repeated in this opinion, but are so factually different as to afford no guide for our opinion here.

Intervenors also allege that the trial court erred in striking their counterclaim which sought an order requiring plaintiffs to abate a nuisance and restore the premises to their original state, and also to enjoin further conver-

sion without a permit. Section 26.1 of the Civil Practice Act, (Ill. Rev. Stat. 1961, chap. 110, par. 26.1,) grants to the trial judge discretion in controlling the issues which may be raised by intervenors. From an examination of the entire record we cannot say that the trial court abused its discretion in striking the counterclaim. Nor would any useful purpose be served in remanding this cause for a hearing on the counterclaim when the city of Chicago has the power and duty to enforce the zoning ordinance as applied to this property.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*