Theodore G. Mitchell, Plaintiff-Appellant, v. Zoning Board of Appeals of the City of Chicago, Sidney D. Smith, Acting Commissioner of Buildings, and John P. Maloney, Zoning Administrator, Defendants-Appellees.

Gen. No. 53,560.

First District, Second Division.

May 19, 1970.

Rehearing denied June 9, 1970.

John D. Vosnos, of Chicago, for appellant.

Raymond F. Simon, Corporation Counsel of City of Chicago, of Chicago (Marvin E. Aspen and Daniel Pascale, Assistant Corporation Counsel, of counsel), for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

Plaintiff filed a complaint in the circuit court for review of a determination by the Zoning Board of Appeals of the City of Chicago affirming an order of the Chica-

go Zoning Administrator requiring plaintiff to deconvert and discontinue use of certain units in an apartment building owned by him. The court affirmed the determination of the Zoning Board, entered judgment for defendants, and assessed costs against plaintiff who appeals.

In 1960 the owner of the property commonly known as 7002–18 North Ridge Avenue in Chicago applied for and received a permit to erect a 32-apartment building on the premises. The parcel was comprised of three recorded lots (Lots 9, 10 and 11) and the building, which was to cover all three lots, was to consist of two wings connected by a wall. One wing was to contain 16 efficiency apartments and the other was to contain 16 bedroom apartments, to comply with the zoning regulations limiting the number of efficiency apartments in any building to 50 percent.

When the building was completed, the original plans were not complied with and two separate buildings were constructed, unconnected in any manner. The building consisting of the efficiency apartments was located on Lot 11 and the building consisting of the bedroom apartments was situated on Lots 9 and 10.

In December 1963, the owner of the tract transferred title to Lots 9 and 10 to plaintiff, and retained Lot 11. It appears that the building sold to plaintiff contained not only the 16 bedroom apartments, but also contained two additional "roughed-in" bedroom units which were unfinished at the time of the sale. Plaintiff was informed by the owner that the two roughed-in apartments existed in compliance with the zoning requirements of the premises, and that plaintiff could lawfully complete the construction thereof.

Without first obtaining a building permit, plaintiff commenced the completion of the two additional apartments. Sometime thereafter a City of Chicago building

3

inspector informed plaintiff that it was necessary to obtain a permit in order to make such structural changes on the property. Plaintiff engaged a structural engineer to draw plans for the apartments, and when the engineer sought a permit from the City to complete the construction, the permit was denied on the ground that under the original permit issued in 1960 and the zoning of the three lots at that time, the addition of two apartments would violate the density requirements applicable to the premises.

Four months after the denial of the permit, the Zoning Administrator issued an order to plaintiff to deconvert and discontinue the use of the two additional apartments. On appeal to the Zoning Board of Appeals the Administrator's order was affirmed. Plaintiff then commenced this action in the circuit court to review the action of the Zoning Board, and the circuit court affirmed the Zoning Board and entered judgment for the defendants, from which plaintiff prosecutes this appeal.

Plaintiff first contends that the action of the Zoning Administrator was not sanctioned by the Zoning Ordinance of the City of Chicago. He argues that the building on Lots 9 and 10 sold to him, as well as the addition of the two apartments thereto, would in no way violate the density requirements of the Ordinance and that therefore the Zoning Administrator had no right to impose sanctions upon him. He further argues that the sale of the lots to him rendered the structure on Lot 11 substandard and that consequently the owner of that lot, rather than plaintiff, should be forced to bring his building into conformity with the requirements of the Ordinance.

Section 11-13-1(3) of the Illinois Municipal Code of 1961 provides that municipalities may "regulate and limit the intensity of the use of lot areas, . . . ." Ill Rev Stats 1961, c 24, par 11-13-1. That a municipality may limit the intensity of use of land has long been recog-

nized by the courts of this state. Exchange Nat. Bank of Chicago v. City of Chicago, 28 Ill2d 341, 192 NE2d 343; Lapkus Builders, Inc. v. City of Chicago, 30 Ill2d 304, 196 NE2d 682. The Chicago Zoning Ordinance implements the intensity limitation by means of a "zoning lot," which is defined by the Ordinance as,

> ". . . a single tract of land located within a single block, which (at the time of filing for a building permit) is designated by its owner or developer as a tract to be used, developed, or built upon as a unit, under single ownership or control. Therefore, a 'zoning lot or lots' may or may not coincide with a lot of record." Municipal Code of Chicago, 1967, c 194A, § 1, Part A, Art 3.2.

Article 5.7–2 of the Ordinance further provides:

> "No improved zoning lot shall hereafter be divided into two or more zoning lots and no portion of any improved zoning lot shall be sold, unless all improved zoning lots resulting from each such division or sale shall conform with all the applicable bulk regulations of the zoning district in which the property is located. . . ."

The building permit issued to the owner of Lots 9, 10 and 11 in 1960 contemplated that those three recorded lots would be utilized as a single zoning lot in the construction of the 32-unit apartment building. Although Lots 9 and 10, of themselves, could have borne an intensity of use of 18 bedroom apartment units, their status must be considered in light of the 1960 zoning of the entire parcel and the structure on Lot 11. The 1960 status cannot be changed by the unilateral action of the owner of the property as was attempted in December 1963.

■ The sale of the lots in 1963 clearly falls within the prohibition of Article 5.7–2 of the Chicago Zoning Ordinance. Article 5.7–2 states that "*all* zoning lots re-

sulting from such division or sale . . ." shall conform to the applicable zoning regulations for the district in which the property is located; the substandard zoning lot retained by the owner was one of the zoning lots "resulting from such . . . sale." (Emphasis supplied.) The structure on Lot 11 was dependent upon the structure on Lots 9 and 10 remaining status quo for its compliance with zoning regulations. Plaintiff was properly ordered to discontinue use of and to deconvert the two additional apartments.

Although no Illinois case has been cited or found on this point, in line with this reasoning are several cases in other jurisdictions interpreting ordinance provisions similar to the one here in question. See Chasanoff v. Silberstein, 177 NYS2d 620, affd 6 NY2d 807, 188 NYS2d 194, 159 NE2d 684; Clemons v. City of Los Angeles, 36 Cal2d 95, 222 P2d 439; Howland v. Acting Superintendent of Buildings, 328 Mass 155, 102 NE2d 423.

Plaintiff contends that the Illinois Municipal Code does not authorize municipalities to govern the division and subdivision of land.

As noted above, section 11–13–1(3) of the Municipal Code of 1961 provides that municipalities may "regulate and limit the intensity of the use of lot areas, . . . ." Article 5.7–2 of the Chicago Zoning Ordinance implements this provision by providing for the continued conformity with zoning regulations once a parcel of land has received a zoning status on an improved basis. The Ordinance consequently does not purport to govern the division and subdivision of land.

The case of Kane v. Zoning Board, 97 RI 152, 196 A 2d 421, does not support plaintiff's position. In the Kane case the court held that the zoning board could not deny an application for a building permit on the ground that the lot upon which the proposed building was to be constructed was created in violation of an ordinance govern-

ing the division of zoning lots; the court stated that the state zoning act did not empower the town council to enact such a provision and that although such power was granted to the town council in another state statute, the town council did not seek to act under the latter statute. Here, Article 5.7-2 was passed by the Chicago City Council pursuant to the grant of power to regulate the intensity of use of zoning areas under the Illinois Municipal Code of 1961.

■■■ Plaintiff next contends that the owner of Lot 11 should have been made a party to the proceeding before the Zoning Board of Appeals. Since the conformity of the structure on Lot 11 to zoning regulations depended upon the building on Lots 9 and 10 remaining status quo, plaintiff's action in attempting to complete the two additional apartments upset that balance. The action was properly commenced by notice to plaintiff, the present owner of Lots 9 and 10 of the tract of land.

■■■ Plaintiff also argues that the City is estopped from enforcing the Ordinance since it issued a Certificate of Occupancy after the 1960 construction, although the buildings did not conform to the zoning requirements. Plaintiff has not established the requisites for an estoppel against the City. Nowhere in the record does it appear that plaintiff in any way relied upon the City's issuance of a Certificate of Occupancy, if any was in fact issued. Nor does it appear that plaintiff was in any manner induced by any City official, leading him to purchase the property and to attempt to complete the construction of the two apartments. People ex rel. American Nat. Bank & Trust Co. of Chicago v. Smith, 110 Ill App 2d 354, 249 NE2d 232. On the contrary, plaintiff himself alleged that he relied upon the representations of his grantor that it would be within the zoning requirements to complete the construction of the two apartments. It should be further noted that plaintiff testified that he

completed construction of the apartments without first having secured the necessary building permit from the City to do so.

The final point raised by plaintiff is that the action taken by the zoning authorities of the City of Chicago deprives him of his property without due process of law and also denies him equal protection of the law. This position is in no manner elaborated on in plaintiff's brief. Nevertheless, it is well established that zoning controls, as they affect property rights, are valid. Exchange Nat. Bank of Chicago v. City of Chicago, 28 Ill2d 341, 192 NE 2d 343; Reitman v. Village of River Forest, 9 Ill2d 448, 137 NE2d 801.

For these reasons the judgment is affirmed.

Judgment affirmed.

McCORMICK, P. J. and LYONS, J., concur.