OAK PARK TRUST AND SAVINGS BANK, Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

First District (2nd Division)    No. 81-1135

Opinion filed July 13, 1982.—Rehearing denied August 10, 1982.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke, Philip L. Bronstein, and Myron N. Schreiber, Assistant Corporation Counsel, of counsel), for appellant.

Daley and George, of Chicago (John J. George and Timothy J. Joyce, of counsel), for appellees.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff sought approval of a zoning change from the City of Chicago for property on the northwest corner of West Diversey Parkway and North Orchard Street. The City of Chicago denied plaintiff's request. Plaintiff then filed a complaint for declaratory judgment challenging the constitutionality of the Chicago Zoning Ordinance as applied to his property. The trial court held that the ordinance, as applied to plaintiff's property, was arbitrary and unreasonable and bore no substantial relationship to the public health, safety, comfort or general welfare, and was therefore unconstitutional. The City of Chicago appeals. The issue before this court on appeal is whether the judgment of the trial court was against the manifest weight of the evidence.

Oak Park Trust and Savings Bank, as trustee, holds title to a parcel of real estate located at 704-708 West Diversey Parkway in Chicago. The beneficial owner of the land trust is Thomas D. Flanagan, who purchased the property in 1975. The parcel contains a frontage of about 93 feet on Diversey and about 250 feet on Orchard. Approximately 85% of the property is zoned B3—3 (general retail district) with the remaining 15% zoned R5 (general residential district). When Flanagan purchased the property it was improved with two multi-unit residential buildings. Plaintiff had these buildings razed when he was unable to bring them into compliance with the city building code. The property is presently unimproved.

In 1979, plaintiff met with community groups to discuss a proposed residential building containing 120 units to be built on his property. Subsequent to these meetings the proposed number of units was decreased to 96. Of the 96 units in the proposed 13-story building, 84 would be two-bedroom units and 12 would be one-bedroom. The proposed structure would contain 96 parking spaces and two driveways. The first floor would be a lobby. There would be no commercial use in the building. Under the B3—3 and R5 zoning classification, a maximum of 70 or 71 dwelling units could be constructed on the property. Under the B3—4 zoning classification sought by plaintiff, a maximum of 144 units could be constructed.

The property directly east of the subject property, on the northeast corner of Diversey and Orchard, is zoned B3—4 and has a restaurant on the lower level and apartments above. The property on the southeast corner of Diversey and Orchard is zoned B5—4, a classification permitting higher density than B3—4, and is currently being used as a parking lot. Directly south of the subject property, on the southwest corner of Diversey and Orchard, the property is zoned R4 and is occupied by multiple family residences. Immediately to the west of the subject property is a seven-story building called the Diversey Parkway Hotel. That property is zoned B3—3. The property north of the subject property on the west side of Orchard is zoned R5. North of the subject site, on the east side of Orchard is a seven-story parking garage which services the Century Mall Shopping Center. All the property in the vicinity of the subject property is developed in compliance with their respective zoning classifications.

Real estate appraiser William McCann testified for plaintiff. He had attended the community meetings which resulted in lessening the number of units in the proposed development from 120 to 96. He testified that he inspected the subject property for the purpose of forming an opinion as to its highest and best use. After describing the properties and zoning in the vicinity of the subject property, he stated that in his opinion the highest and best use of the property would be a 96-unit condominium building. McCann testified that he based his opinion on the zoning change sought by plaintiff, the need and demand for the proposed use, its compatibility with the surrounding properties, trends of development in the area and neighborhood influences such as schools, shopping and transportation. In his opinion, the proposed use would not have a depreciatory effect on the surrounding properties but instead would tend to stabilize the immediate vicinity and encourage additional long term investment in permanent tenancy in the area. He testified that the property would be worth $1 million if rezoned for plaintiff's proposed use. If the property was not rezoned it would be worth between $700,000 and $750,000.

McCann believed that because of the seven-story garage which services the Century Mall, he would not recommend building new multi-family structures on the portion of the subject property zoned R5 (the north 15% of the lot). He also did not believe that the subject property could be feasibly developed for business use due to the substantial amount of commercial property available in the area. McCann also testified that under the existing B3—3 and R5 zoning, a building as tall or taller than the proposed use could be built on the subject property.

Rolf Campbell, a city planner and zoning consultant, also testified for plaintiff. He testified that a 13-story building could be built under either a B3—3 or R5 zoning classification, as well as under the B3—4 classification sought by plaintiff. There is also no difference between B3—3 and B3—4 classifications with regard to off-street parking, off-street loading, or side, front or rear yard set backs. The B3—4 classification, however, allows approximately twice the density permitted under B3—3 or R5. He testified that the purpose of the requested zoning change is to permit construction of family type units. He also stated that the requested change represents a logical extension of existing zoning classifications in the vicinity of the subject property. Campbell testified that in his opinion the highest and best use of the subject property would be for a residential structure allowing for family units and that the structure should not contain both residential and commercial uses. He also believed that the proposed 96-unit condominium structure would be beneficial to the surrounding area.

Al Swanson, a traffic engineer, testified for plaintiff that he was familiar with the area in question and had conducted a number of traffic counts on Diversey near the subject property. In his opinion the proposed development would not have an adverse impact on traffic in the area. Further, the two driveways in the proposed building were acceptable from a traffic engineer's standpoint.

Patrick Arnold, a city planner employed by the City of Chicago, testified for the City that he was familiar with the subject property. It was his opinion that the property's existing B3—3 and R5 zoning classification were proper and that any increase in the density would have a deleterious effect on the surrounding area. He based his opinion on the low density, residential nature of the buildings north of Diversey on the east sides of Orchard and Burling, the street one block west of Orchard. According to Arnold, the proposed development would have an adverse effect on the properties north of Diversey which are zoned and developed in conformance with the R5 zoning classification. He believed that Orchard was a reasonable boundary line between zoning classifications.

On cross-examination, Arnold acknowledged that a 13-story building could be constructed under the existing classification. He agreed that

two-bedroom units would be more desirable for attracting families. He believed, however, that any project which would increase density by 40% to 50% over the existing zoning classification would have a deleterious effect on the area, which was already congested.

Real estate broker and appraiser John McNamara testified for the City that the highest and best use of the subject property was under the existing zoning. He also believed that the property could be feasibly and economically developed under the existing classification. McNamara testified that the value of the property as presently zoned was approximately $710,000.

The City then called three residents of the area. They objected to the proposed development because it would increase traffic and parking congestion in the area. One witness feared that the increase would pose a threat to neighborhood children and believed the development would diminish the value of his single family residence. Another witness agreed with the belief that his property would decrease in value because of the proposed structure and testified that he purchased his home in reliance on the R5 zoning of the subject property, which abuts his property to the east. Two of these three witnesses believed that construction of the proposed building would invite others to build high rises in the area.

Plaintiff then called two residents of the area as rebuttal witnesses. One, who owns property adjoining and across the street from the subject property and lives on Orchard one-half block north of Diversey, believed that the proposed development would be an asset to his property and the community as a whole. In his opinion, a commercial development on the subject property would be a detriment to his properties. The other rebuttal witness, who resides to the east of the subject property, thought the building would be an asset to the area.

The trial court ruled for plaintiff and entered a declaratory judgment giving plaintiff the right to construct a 13-story, 96-unit residential building on the property in issue. The court believed that the restrictions imposed on plaintiff's property by the City of Chicago were unreasonable since they did not benefit the surrounding community, and that the proposed development was reasonable because it did not have a negative impact on the public.

The City's contention on appeal is that the trial court erred in declaring the City's zoning ordinance invalid as applied to plaintiff's property on West Diversey Parkway. In essence, the City claims that the B3—3 and R5 zoning classifications, rather than the B3—4 classification, were proper.

The standard of review in zoning cases is that the findings of the trial court will not be disturbed unless they are against the manifest weight of the evidence. (*Pioneer Trust & Savings Bank v. County of Cook* (1978), 71

Ill. 2d 510, 516-17, 377 N.E.2d 21.) However, a zoning ordinance is presumptively valid and one who attacks it has the burden of overcoming the presumption with clear and convincing evidence. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428, 312 N.E.2d 625.) The issue before this court is therefore whether the trial court's decision—that plaintiff overcame the presumption with clear and convincing evidence—was against the manifest weight of the evidence.

The criteria used in determining the validity of a zoning ordinance were set forth in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65:

> "Even though the validity of each zoning ordinance must be determined on its own facts and circumstances [citations] * * * among the facts which may be taken into consideration in determining validity of an ordinance are the following: (1) The existing uses and zoning of nearby property, [citations], (2) the extent to which property values are diminished by the particular zoning restrictions, [citations] (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, [citations], (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, [citation], (5) the suitability of the subject property for the zoned purposes * * * [citations], and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. [Citations]."

In its oral order, the trial court cited *La Salle National Bank of Chicago v. County of Cook* and specifically noted the six factors listed above. In regard to the existing uses and zoning of nearby property, the court acknowledged that the property on the northeast corner of Diversey and Orchard is zoned B3—4 and the property on the southeast corner is zoned B5—4. The court also noted that a 17-story apartment building was being built a block east of the subject site. The court concluded that the proposed B3—4 zoning classification would conform and be compatible with the existing zoning of nearby property. The court did not mention that all the nearby properties were developed in conformity with the zoning classifications.

With respect to the extent to which the subject property's value is diminished by the B3—3 and R5 zoning classification, witnesses for both parties testified that the subject property is worth between $700,000 and $750,000 under the existing zoning. It was undisputed that if plaintiff's proposed development was built under a B3—4 classification, the property would be worth approximately $1 million. The next factor is the extent to which the retention of the B3—3 and R5 classification would

promote the health, safety, morals or general welfare of the public. The trial court did not believe that these public interests were enhanced by the current, as opposed to the proposed, zoning classification. The court noted that because of the positioning of the proposed building, the properties on North Orchard and on the east side of Burling would continue to have full access to light and air. There was, however, testimony for the City by two residents of the area that they believed construction of the building would decrease the value of their properties.

The trial court then balanced the relative gain to the public with the hardship imposed on plaintiff if the B3—3 and R5 classification was upheld. The court noted the testimony of plaintiff's experts regarding traffic and parking, the stabilizing effect the proposed development would have on the community, the likely increase in taxes generated and the additional patrons for the surrounding businesses which would result from the development. The court concluded that plaintiff's proposal would have no adverse impact on the community. On the other hand, plaintiff's property would be worth approximately a quarter million dollars more if the property was developed according to the proposal.

The trial court then acknowledged that plaintiff would receive some benefit from the subject property if the present zoning classification is upheld. Plaintiff need not show that all possible uses of the property would be unsuitable but is required to show the unreasonableness of the zoning restriction and the reasonableness of the proposed use. (See *Brunette v. County of McHenry* (1977), 48 Ill. App. 3d 396, 398, 363 N.E.2d 122.) Noting that the height of the proposed building, as well as the side, front and rear yard set backs, would have been permitted under the B3—3 classification, the court concluded that the alteration regarding density would not affect surrounding properties and demonstrated the suitability of the site for the proposed development. The court pointed out that the subject property had been vacant for two years and is the only vacant lot in the area on which the proposed structure could be built. The trial court concluded that the City of Chicago's zoning restrictions were unreasonable and arbitrary as regards plaintiff's property since they do not benefit the surrounding community. The court further concluded that plaintiff's proposal was reasonable.

■■ In its analysis, the trial court failed to give due weight to the City's legitimate interest in fashioning an overall zoning scheme. It is within the province of the local municipal body to determine the uses of property and establish zoning classifications. (*La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 307, 388 N.E.2d 388.) This authority emanates from the municipality's police power to enact laws for the protection of the welfare of the community. (*Avenue State Bank v. Village of Oak Park* (1968), 99 Ill. App. 2d 329, 337, 241 N.E.2d 630.) The borders for zoning

classifications must exist somewhere, and an appropriate place for such a border could be a street. (*Bennett v. City of Chicago* (1962), 24 Ill. 2d 270, 273, 181 N.E.2d 96.) We believe that plaintiff failed to prove by clear and convincing evidence that Orchard Street was an inappropriate dividing line between B3—3 and B3—4 classifications.

■■ ■ With respect to the trial court's reliance on the existence of the 17-story apartment building located approximately one block east of the subject property, we note that the immediate vicinity of that structure is dramatically different from the immediate vicinity of the subject site. The former is highly congested with a few single- and multi-family residences. The latter is currently less congested with a much higher percentage of single- and multi-family residences. The fact that plaintiff will suffer a financial detriment if prohibited from constructing the 96-unit building is a factor to be considered in determining the validity of the zoning ordinance's restrictions. That factor is not, however, determinative. (*Stachnik v. Village of Norridge* (1966), 68 Ill. App. 2d 361, 367, 216 N.E.2d 207.) Plaintiff admits that under the present zoning scheme he can construct a building with approximately 71 units. We note that in addition to the presumption favoring the validity of zoning ordinances in general, there is a presumption that density restrictions contained in zoning ordinances are reasonably related to the welfare of the community. (*Lapkus Builders, Inc. v. City of Chicago* (1964), 30 Ill. 2d 304, 309, 196 N.E.2d 682.) We believe that plaintiff has failed to rebut this presumption by clear and convincing evidence.

■■ In view of these factors, we find that plaintiff has failed to prove by clear and convincing evidence that the City's zoning ordinance is unreasonable and arbitrary as regards plaintiff's property. From a review of the record, it is our belief that plaintiff failed to overcome the presumption in favor of the validity of the zoning classification. We therefore conclude that the trial court's declaration that the zoning ordinance is unconstitutional as applied to plaintiff's property is against the manifest weight of the evidence.

The judgment of the trial court is reversed.

Reversed.

DOWNING and HARTMAN, JJ., concur.